799 N.E.2d 911 (2003)
343 Ill. App.3d 1210
279 Ill.Dec. 108
In re BRETT R., Jay Rodney R., and Thomas P., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Darlene T., Respondent-Appellant).
No. 2-03-0466.
Appellate Court of Illinois, Second District.
October 27, 2003.
*912 Alan H. Cooper (Court-appointed), Rochelle, for Darlene T.
Deborah E. Ellis, Ogle County State's Attorney, Oregon, Martin P. Moltz, Deputy Director, State's Attorneys Appellate Prosecutor, Elgin, Paul Benjamin Linton, Northbrook, for the People.
Justice McLAREN delivered the opinion of the court:
Respondent, Darlene T., appeals from the order of the trial court terminating her parental rights to Brett R., Jay Rodney R., and Thomas P. We affirm.
Darlene's only issue on appeal is that the trial court lacked subject matter jurisdiction to terminate her parental rights *913 and that the orders terminating her rights are, therefore, void.
On May 1, 1998, the State filed a petition for adjudication of wardship, alleging that Brett R. and Jay Rodney R. were neglected. Darlene was served with a summons by substitute service. However, the boys' father, Jay R. (Jay), was not served; the summons addressed to him was returned without service and bore the notation, "In Rehab in Aurora." On June 2, 1998, Darlene admitted to the petition. The trial court adjudicated the minors neglected and continued the case under supervision for one year. While the preprinted order stated that "all necessary and indispensable parties" had notice of the case, there is no indication that Jay was served with a summons or appeared in court during any of the proceedings.
Jay was served with a summons regarding a related order of protection on September 14, 1998, and an attorney filed an appearance on his behalf. Jay appeared in court several times for hearings regarding the order of protection during the next several months; however, the record does not indicate that he was ever served with the original neglect petition during this time.
On February 23, 1999, Jay and his attorney were in court and admitted the allegations in the order of protection. On that same date, the State filed a petition to terminate the order of supervision in the neglect case and enter an adjudication of wardship. An amended petition, seeking the same relief, was filed in March and was served on Darlene. There is no indication that Jay was served with this petition. The State also filed a supplemental petition seeking adjudication of wardship of Darlene's child with Steve P., Thomas P., who was born after the initiation of this case. Both Darlene and Steve were served with this petition.
On June 1, 1999, the court found all three minors neglected, adjudicated them wards of the court, and appointed the Department of Children and Family Services (DCFS) as guardian. While the preprinted dispositional order was marked to indicate that the court "accepted the admission of the petition by the parent(s)," there is no indication in the docket entry that either father was present on that date.
On April 18, 2002, the State filed a petition to terminate Darlene's parental rights to all three children. Darlene and Steve were served by substitute service. The State attempted service at Jay's last known address, but the summons was returned marked, "Moved" and "no forward." The State also published notice in the local newspaper in the town of Jay's last known address, but the publication referred to a hearing to have the minors declared wards of the court and did not refer to the petition to terminate Darlene's parental rights.
The hearing on the termination petition began on September 13, 2002. The court noted that the published notice did not refer to the termination proceedings and ordered the State to publish a corrected notice. Without objection, the court proceeded with testimony regarding Darlene's fitness but also ruled that it would make no findings until after the publication of the corrected notice was made.
The State then filed a petition to terminate Jay's parental rights. Publication of notice regarding both termination petitions was made. Jay was also personally served, at a Salvation Army facility in Iowa, with a summons regarding the petition to terminate his parental rights. Jay appeared in court on the next scheduled date. At that time, the court noted that Jay had never been served with the original neglect petition, which had been filed *914 in May 1998. Jay was served a copy of that petition in open court and was admonished regarding both it and the termination petition. The court continued the case for two weeks and invited all the parties "to present whatever arguments that they wish to make" regarding the lack of prior service of the original petition "as it may impact all proceedings before this Court."
On the next date, the court set the issue as follows:
"What I brought to the attention of the parties at the original time that the [Termination] Petition was filed, as I was going through the Court file and preparing my ruling there was aan indication that one of the fathers was not served, that he was served on an Order of Protection but never served on the original Petition. And Iand I raise the issue as to either if there's a personal jurisdiction issue or subject matter jurisdiction issue, what the issues are with regard to that before I ruled on the Motion for termination."
The court then continued the case so that Jay's attorney could research the issue.
On the next date, both the State and the children's guardian ad litem argued that the failure of service did not affect the court's jurisdiction. Darlene's counsel then stated:
"As to Ms. [T.], Judge, I would agree with part of Ms. Kauffmann's [guardian ad litem] argument that Ms. [T.] has been here at all relevant time[s] and had her day in court, so I don't think the jurisdiction question really applies to her."
Jay argued that the court had "a lack of subject matter jurisdiction" and that the original order of adjudication "would be void in its entirety," not only void as to himself. The court then continued the case for a decision.
Jay failed to appear on the next court date. The court ordered the State to "issue a summons or publication on the father on the original underlying Petition for Adjudication." The court set a date for a hearing on the petition and for a decision on the fitness issues raised in the termination petition.
The State published notice and also obtained personal service on Jay. On February 11, 2003, Jay appeared in court and surrendered his parental rights to Brett and Jay Rodney. He was discharged from further involvement in the proceedings after signing consents to adoption. The court then ruled that it did "have jurisdiction of the minors and of the mother and of all the parties herein." The court also ruled that Darlene was proved unfit and scheduled a hearing on the best interests of the minors. After that hearing, the court determined that it was in the minors' best interests to terminate Darlene's parental rights to all three children. Shortly thereafter, the State filed a petition to terminate Steve's parental rights. Steve failed to appear at the hearing on the petition and was defaulted. Darlene's appeal followed.
Darlene argues that the State's failure to serve Jay with a summons and a copy of the original neglect petition until the termination proceedings had begun, more than four years later, deprived the trial court of subject matter jurisdiction over the proceedings. Thus, all the orders relating to the adjudication of neglect and wardship and to the termination of her parental rights to all three children are void. We disagree.
In juvenile proceedings, due process requires that adequate notice of the proceedings be given to a minor and his parents, including written notification of the specific charge or factual allegations to be considered at an adjudicatory hearing. *915 In re B.L., 315 Ill.App.3d 602, 605, 248 Ill.Dec. 548, 734 N.E.2d 476 (2000). While noncustodial parents should be served in person or by mail whenever possible, it is notice to the custodial parent that is crucial. B.L., 315 Ill.App.3d at 605, 248 Ill.Dec. 548, 734 N.E.2d 476. A pleading in a juvenile case that fails to name and notify the necessary respondents fails to invoke the trial court's jurisdiction and thereby renders its orders void. B.L., 315 Ill.App.3d at 605, 248 Ill.Dec. 548, 734 N.E.2d 476. However, the lack of notice to a party can be waived, and diligence on the part of the State may be presumed, unless some question is raised in the trial court regarding the failure to identify or locate a noncustodial parent whose identity or address is unknown to the State at the outset of the proceedings. B.L., 315 Ill.App.3d at 605, 248 Ill.Dec. 548, 734 N.E.2d 476.
Clearly, the trial court erred in adjudicating Brett and Jay Rodney neglected in the absence of service of summons or publication of notice to Jay. We do not know why the State failed to publish notice when the summons was returned unserved, why the case proceeded to disposition in the absence of proper service, or why it took four years for anyone to realize that Jay had not been properly notified of the proceedings. The State failed to carry its burden to give notice of the proceedings to the proper parties, and the trial court only belatedly realized its own failure to hold the State to its burden.
However, this does not establish a lack of subject matter jurisdiction. Subject matter jurisdiction refers to the power of a particular court both to adjudicate the general question involved and to grant the particular relief requested. In re A.H., 195 Ill.2d 408, 415, 254 Ill.Dec. 737, 748 N.E.2d 183 (2001). No one argues that the trial court could not hear the case from the neglect petition to the termination of parental rights. It would be anomalous to suggest that a defect in the service of a party results in the trial court's inability to hear a neglect petition. The failure to properly serve Jay with the neglect petition affected the trial court's personal jurisdiction over Jay. It did not, however, divest the court of its jurisdiction over the neglect and termination proceedings.
While Darlene had a legitimate issue regarding service of summons on Jay, she slumbered on that issue. Darlene committed a procedural default, acquiescing in a procedure that short-circuited the proceedings below. See B.L., 315 Ill.App.3d at 605, 248 Ill.Dec. 548, 734 N.E.2d 476. It is clear that Jay's address was unknown to the State early in the proceedings. While the neglect petition listed an address for Jay, the summons was returned unserved and bearing the legend, "In Rehab in Aurora." Jay was not at the address at which the State had attempted to serve him, and whether the unnamed rehabilitation clinic was in Aurora, Illinois, Aurora, Colorado, or Aurora, Ontario, Canada, was left unsaid. Publication of notice should have been made at that point. However, Darlene never objected at the original dispositional hearing or as the case proceeded for the next four years. It was the court, not Darlene, that raised the issue of jurisdiction after the State filed petitions to terminate parental rights.
Not only did Darlene fail to raise the issue in a timely manner, she denied that jurisdiction was an issue at all. Darlene was given the opportunity, albeit belatedly, to make an argument regarding the issue of jurisdiction. Even then, Darlene failed to assert her right, her counsel arguing that Darlene "has been here at all relevant time[s] and had her day in court, so I don't think the jurisdiction question really applies to her."
*916 Darlene now argues that this "was simply a statement that the court had jurisdiction over the person of the appellant, since she had been present and `had her day in court.'" This is disingenuous. The court's personal jurisdiction over Darlene was never questioned; any question regarding personal jurisdiction related to Jay. Furthermore, the court clearly explained the factual situation that had given rise to the court's concern and stated that both personal jurisdiction (over Jay) and subject matter jurisdiction should be addressed. The arguments of other attorneys involved, and the cases cited in the arguments, clearly did not involve the court's personal jurisdiction over Darlene.
We also conclude that, despite the inattention of the court and the parties to this case, the court obtained Jay's appearance and Jay had notice sufficient to establish subject matter jurisdiction. Jay was served with a summons regarding the order of protection on September 14, 1998, and an attorney filed an appearance on his behalf. On February 23, 1999, Jay and his attorney were in court and admitted the allegations in the order of protection. On June 1, 1999, pursuant to the petition to terminate supervision, the court found all three minors neglected, adjudicated them wards of the court, and appointed DCFS as guardian. Thus, as of February 23, 1999, three months before the children were adjudicated neglected and made wards of the court, all parties had appeared. Although Jay had not been properly served with copies of the neglect petition, he had notice that the court was exercising subject matter jurisdiction over the children in derogation of the rights of the parents.
The issue of the trial court's personal jurisdiction over Jay has been further mooted by Jay's subsequent surrender of his parental rights. Darlene does not contend that the court's findings regarding parental fitness and the best interests of the children were against the manifest weight of the evidence. Remand for a new trial would accomplish nothing, as no service of Jay would be required, and the evidence was, without contention to the contrary, sufficient to support the court's findings.
For these reasons, the judgment of the circuit court of Ogle County is affirmed.
Affirmed.
HUTCHINSON, P.J., and BOWMAN, J., concur.