*In re* MIRACLE C. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Gladys C. *et al.*, Respondents-Appellants).

Second District   Nos. 2—02—0269, 2—02—0336 cons.

Opinion filed December 18, 2003.

Donald P. Sullivan, of Rockford, for appellant Gladys C.

Kathryn Bischoff, of Rockford, for appellant Illya N.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, Sally A. Swiss, and Lawrence M. Bauer, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KAPALA delivered the opinion of the court:

Respondent-mother, Gladys C., appeals from the judgment of the circuit court of Winnebago County terminating her parental rights to her minor children, Miracle C., Jasmine N., and Ilsheya N. Respondent-father, Illya N., appeals from the judgment terminating his parental rights to his minor children, Jasmine N. and Ilsheya N. The appeals have been consolidated in this court.

## I. FACTUAL BACKGROUND

On July 15, 1998, the State filed a petition for adjudication of wardship alleging that Miracle C. was a neglected minor because she was born with cocaine in her urine, blood, or meconium that was not the result of medical treatment administered to the mother or the child (705 ILCS 405/2—3(1)(c) (West 1998)). On the same date, the

State filed petitions for adjudication of wardship alleging that Jasmine N. and Ilsheya N. were neglected minors. The State alleged that the minors' environments were injurious to their welfare because their sibling, Miracle C., was born with cocaine in her urine, blood, or meconium that was not the result of medical treatment administered to the mother or the child. The record shows that respondent-mother was served with a summons and a copy of the petitions for adjudication of wardship on October 21, 1998. The petitions identified respondent-father as the father of Jasmine N. and Ilsheya N., but listed no address. Respondent-father was not served with a summons or notified of the proceedings by certified mail. Instead, respondent-father was notified of the proceedings concerning his children by a publication dated May 21, 1999. Miracle C.'s father is someone other than respondent-father and is not a party to either of these consolidated appeals.

On June 2, 1999, after a hearing on the State's petitions for adjudication of wardship, Miracle C., Jasmine N., and Ilsheya N. were adjudicated neglected minors. On the same date an order of default was entered against respondent-father. On September 1, 1999, the trial court entered a dispositional order declaring the minors wards of the court and appointing the Department of Children and Family Services (DCFS) as their guardian. Following a permanency hearing, in an order entered on October 27, 2000, the trial court determined that the appropriate permanency goal for the minors was substitute care pending court determination of termination of parental rights.

On January 4, 2001, the State filed motions for termination of respondents' parental rights. In the motions, the State alleged in count I that respondent-mother was an "unfit person" as defined by the Adoption Act (750 ILCS 50/1 (West 2000)) because she failed to maintain a reasonable degree of interest, concern, or responsibility as to her children's welfare (750 ILCS 50/1(D)(b) (West 2000)). In count II the State alleged that she failed to make reasonable efforts to correct the conditions that were the basis for the removal of her children from her, or to make reasonable progress toward the return of her children to her within nine months of the adjudication of neglect (750 ILCS 50/1(D)(m) (West 2000)). As to respondent-father, the State alleged in count I that he was an "unfit person" because he abandoned his children (750 ILCS 50/1(D)(a) (West 2000)). In count II the State alleged that he failed to maintain a reasonable degree of interest, concern, or responsibility as to his children's welfare (750 ILCS 50/1(D)(b) (West 2000)). In count III the State alleged that he failed to make reasonable efforts to correct the conditions that were the basis for the removal of his children from him, or to make reasonable

progress toward the return of his children to him within nine months of the adjudication of neglect (750 ILCS 50/1(D)(m) (West 2000)). The matter was set for a January 26, 2001, first appearance on the motions to terminate parental rights.

On January 26, 2001, respondent-father appeared before the trial court for the first time. Respondent-mother was also present in court. The trial court appointed counsel for respondent-father and provided him with copies of the motions to terminate his parental rights. The appointment of respondent-mother's attorney in the previous neglect proceedings was continued. The trial court also explained to both respondents the allegations in the motions and advised them of their rights.

The motions for termination of parental rights were heard on February 28, 2002. During the fitness portion of the proceedings, the State called Kathryn Craig, a caseworker employed by Lutheran Social Services of Illinois (LSSI). Craig was assigned to the minors' case at the end of September 2000. At that time, there was no documentation indicating that either respondent had completed any services. Craig said that the children were removed from a placement with their maternal grandmother and placed in traditional foster care on January 4, 2001. Craig identified four client service plans, and the plans were admitted into evidence.

Craig testified that the previous caseworker determined that respondent-father was in prison. Craig did not mail respondent-father any client service plans while he was in prison, and she did not know whether the previous caseworker had done so. Craig indicated that respondent-father had not contacted the previous caseworker. Craig testified that she first met respondent-father in court on January 26, 2001. At that time, respondent-father told Craig that he knew there had been DCFS involvement with his children but that he had not realized that the case was so serious. On January 26, 2001, Craig gave respondent-father her phone number, and respondent-father gave Craig his parents' phone number.

Craig explained that after several failed attempts to set up visits, respondent-father visited his children at the LSSI office on June 22, 2001. According to Craig, this was respondent-father's first visit with his children in nearly five years. Craig also testified that the minors' foster parents took the minors to Chicago in December 2001 to visit with respondent-father. Respondent-father did not request other visits. Craig said that respondent-father provided no financial support for the children, never requested information regarding the children's schooling or medical care, and did not send the children presents or cards at their birthdays. Craig indicated that respondent-father never

requested that the children be placed with him and never contacted her to inquire as to what services he needed to complete so that placement with him could be considered. Craig also related that respondent-father refused to sign releases that would allow her to verify any previous services respondent-father had received.

Craig identified substance abuse treatment as the primary focus of respondent-mother's service plan. According to Craig, respondent-mother had not complied with substance abuse treatment. Craig related that respondent-mother finally was assessed for substance abuse treatment on November 8, 2001. Craig said that respondent-mother had not become involved in her children's lives and provided no form of support. Respondent-mother did not attend scheduled visits in February and March of 2001. Respondent-mother had telephone contact with Miracle C. in May 2001. Otherwise, she had no contact with the children from January 2001 to June 2001. Craig indicated that, since June 2001, visits with respondent-mother were more consistent and that her recent interaction with the children was appropriate.

Respondent-father testified that he is the father of Jasmine N. and Ilsheya N. According to respondent-father, he first became aware of the court proceedings concerning his children while he was in the custody of the Illinois Department of Corrections (DOC). Respondent-father said he has served three different prison terms for a drug offense, forgery, and residential burglary. Respondent-father explained that he was released from DOC on April 18, 2000. According to respondent-father, approximately one week before his release from DOC, his DOC counselor informed him that "[his] kids was in DCFS." Respondent-father was notified of the January 26, 2001, court date by his father, who had received a telephone call from respondent-mother regarding the court date.

Respondent-father said that he never received a service plan and was not informed of his goals and objectives in his children's case. Respondent-father explained that he refused to sign releases when requested because, in contravention of their rules, he was admitted into a substance abuse program at Rosecrance treatment center in Rockford before he finished another treatment program that he had previously started. Respondent-father did not want anyone to know that he was not supposed to be in the program at Rosecrance. Respondent-father claimed that he finished a three-month inpatient substance abuse treatment program at Rosecrance. Respondent-father said he had a certificate to prove successful completion of that program, but he did not bring it to court or give it to the caseworker or to his attorney.

Respondent-father testified that he had three visits with his children since January 2001. He would have had more visits but when he left a telephone message for the caseworker in December 2001 she did not return his call. Respondent-father could not recall the last time he had contact with his children before coming to court on January 26, 2001. He indicated that his last contact was at about the time that Ilsheya was five years old. Ilsheya was 11 years old as of respondent-father's testimony. Respondent-father said that he had not sent a card, letter, or present to his children for about seven years prior to January 26, 2001. Respondent-father indicated that the lack of contact was not his choice but was because respondent-mother was mad at him. Respondent-father admitted that he has not provided any financial support for his children.

Respondent-mother testified that she is the mother of Miracle C., Jasmine N., and Ilsheya N. She indicated that she was engaged in substance abuse treatment at P.H.A.S.E. in Rockford. She began treatment there on November 14, 2001. Respondent-mother admitted that she tested positive for drugs in November 2001. She also admitted that she knew back in 1998 that her substance abuse problem needed correction.

The trial court found that respondent-mother failed to make reasonable progress toward the return of her children to her within nine months of the dispositional orders. Accordingly, the trial court held that the State proved by clear and convincing evidence that respondent-mother was an unfit person as alleged in count II of the motions to terminate her parental rights.

The trial court also found that respondent-father had no contact with his children for a period of five to seven years before January 26, 2001. The trial court found further that during the period subsequent to January 26, 2001, respondent-father showed no interest in the children's welfare and did not contribute to their support. The trial court said that "[respondent-father's] involvement with the children and their lives subsequent to January 26, at best, [was] a token gesture of interest." Accordingly, the trial court held that the State proved by clear and convincing evidence that respondent-father was an unfit person as alleged in counts I and II of the motions to terminate his parental rights.

The best-interest portion of the proceedings also took place on February 28, 2002, immediately following the unfitness portion. The State called Kathryn Craig, who testified that all three children had been living with a foster family for just over one year. According to Craig, the foster parents have provided an adequate home for the children, are financially able to provide for their needs, and participate

fully in the children's education. The children are close to the foster parents' son and call their foster parents Mom and Dad. Craig related that neither respondent could provide the stable family life that the foster parents offer the children. The foster parents have indicated that they desire to adopt all three children. According to Craig, Jasmine N. and Ilsheya N. have both expressed a desire to continue living with their foster family. The foster parents expressed a willingness to allow the children to continue to visit respondents. Craig opined that it was in the children's best interest to terminate respondents' parental rights so that the children are freed for adoption.

The court-appointed special advocate (CASA), as guardian *ad litem*, testified that she observed the children improve physically, mentally, and emotionally since their placement with the foster family. The CASA opined that it was in the children's best interest that respondents' parental rights be terminated to free the children for adoption.

Respondent-father did not testify or offer any evidence at the best-interest portion of the proceedings. Respondent-mother testified that she had a properly furnished two-bedroom apartment and was looking for a job so that she could support her children. Respondent-mother indicated that if her children were returned to her she would take them to church each week, see that they went to school each day, and remain clean and sober. Respondent-mother said that her children lived with her last in December 1998.

Counsel for the State and counsel for the guardian *ad litem* urged the court to terminate respondents' parental rights. Neither counsel for respondents made an argument or recommendation. Thereafter the trial court found that it was in the children's best interest to terminate respondents' parental rights and gave DCFS, as guardian, the authority to consent to the children's adoption. Respondents filed timely notices of appeal.

## II. ANALYSIS

### A. RESPONDENT-FATHER'S APPEAL
#### (Appeal No. 2—02—0336)

On appeal, respondent-father contends that (1) the State failed to prove by clear and convincing evidence that he was an unfit person; (2) the trial court failed to admonish him in accordance with section 1—5(3) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1—5(3) (West 2000)); (3) the trial court abused its discretion in finding that it was in the minors' best interest to terminate his parental rights; and (4) he was not given actual notice of the juvenile court proceedings involving his children.

We hold that the lack of notice to respondent-father prior to the

adjudicatory phase of the proceedings rendered void, for lack of jurisdiction, the orders finding his children neglected and adjudicating them wards of the court. Secondly, we hold that, as a result of the void adjudicatory and dispositional orders, respondent-father was denied due process in the proceedings terminating his parental rights. Therefore, without deciding respondent-father's other contentions on appeal, we reverse the trial court's orders finding respondent-father's children neglected, adjudicating them wards of the court, and terminating respondent-father's parental rights.

■ Respondent-father contends that he had no actual notice of the juvenile court proceedings concerning his children. He argues that he was never served with a summons and that the State was improperly permitted to serve him with notice of the proceedings by publication without conducting a diligent inquiry to ascertain his whereabouts or filing an affidavit detailing the efforts to effectuate service. See 705 ILCS 405/2—16(2) (West 2000). While it is true that respondent-father does not specifically appeal the adjudication of wardship of his two children, but only the order finding him unfit, terminating his parental rights, and authorizing DCFS to consent to the adoption of his children, we have an obligation to *sua sponte* consider the issue of the trial court's jurisdiction. See *People v. Bounds*, 182 Ill. 2d 1, 3 (1998).

■ Due process requires that notice in juvenile proceedings be equivalent to that constitutionally required in civil and criminal cases. *In re Application of Gault*, 387 U.S. 1, 33, 18 L. Ed. 2d 527, 549, 87 S. Ct. 1428, 1446-47 (1967); *In re C.R.H.*, 163 Ill. 2d 263, 269 (1994) (a minor and his or her parents have a constitutional right of due process to receive adequate notice of a juvenile proceeding). The Juvenile Court Act provides that when a petition is filed the clerk of the court shall issue a summons to the minor's legal guardian or custodian and to each person named as a respondent. 705 ILCS 405/2—15 (West 2000). Section 2—16 of the Juvenile Court Act governs when service by publication is permitted. This section states in pertinent part that where a respondent's usual place of abode is not known, a diligent inquiry shall be made to ascertain the respondent's current and last known address. 705 ILCS 405/2—16(2) (West 2000). If the diligent inquiry does not reveal the party's location, the Juvenile Court Act requires the petitioner's attorney to file an affidavit showing that the respondent, on due inquiry, cannot be found or is concealing his or her whereabouts so that process cannot be served. 705 ILCS 405/2—16(2) (West 2000). The affidavit shall state the last known address of the respondent and the efforts that were made to effectuate service. 705 ILCS 405/2—16(2) (West 2000). Publication must then be made once in a newspaper of general circulation in the county where the action is

pending. 705 ILCS 405/2—16(2) (West 2000). If the respondent fails to appear after publication has been properly effectuated, the trial court shall enter any appropriate orders of default against the respondent. 705 ILCS 405/2—21(1) (West 2000).

In this case the order entered on April 28, 1999, includes the following language: "State given leave to publish on [respondent-father] and other fathers. DCFS to perform a diligent search for [sic]." Thereafter, the State filed a "Publication Notice" directed to respondent-father dated May 21, 1999. However, there was no affidavit filed by the assistant State's Attorney showing that respondent-father, on due inquiry, could not be found or was concealing his whereabouts, stating the last known address of respondent-father, and describing the efforts that were made to effectuate service. Notice by publication should not have been permitted prior to the filing of such an affidavit. See 705 ILCS 405/2—16(2) (West 2000). We note further that the trial court was not apprised, by any other means, that a diligent search for respondent-father was conducted. Moreover, the State concedes that respondent-father was not properly served. Accordingly, the trial court erred in finding that respondent-father was served properly by publication and erred in entering a default order against him based on that erroneous finding.

The failure to name and serve a necessary party in a juvenile proceeding raises the question not of personal jurisdiction over that party, but of the subject matter jurisdiction of the court. *In re K.C.*, 323 Ill. App. 3d 839, 846 (2001). "A minor and his or her parents have a constitutional right of due process to receive adequate notice of a juvenile proceeding." *C.R.H.*, 163 Ill. 2d at 269. "A pleading in a juvenile proceeding that does not name and notify necessary respondents, which includes parents or a legal guardian, fails to invoke the jurisdiction of the court and thereby renders its orders void." *C.R.H.*, 163 Ill. 2d at 271; see also *In re A.H.*, 195 Ill. 2d 408, 423-24 (2001); *People v. R.D.S.*, 94 Ill. 2d 77, 83 (1983). The fact that respondent-father received no notice of the proceedings involving his children left the trial court without subject matter jurisdiction to find Jasmine N. and Ilsheya N. neglected and to adjudicate them wards of the court at the subsequent dispositional hearing.

In *C.R.H.* the court recognized a limited exception to the above rule, excusing notice to a noncustodial parent where the noncustodial parent's whereabouts are unknown and the custodial parent received notice. *C.R.H.*, 163 Ill. 2d at 270-71, citing *In re J.W.*, 87 Ill. 2d 56, 58-61 (1981), and *In re J.P.J.*, 109 Ill. 2d 129, 137-39 (1985). In this case the noncustodial parent, respondent-father, was not served and the custodial parent, respondent-mother, did receive notice. However,

the limited exception excusing service is not applicable here because the record indicates that respondent-father's whereabouts were not unknown to the State by the time of the adjudicatory hearing. The record contains a court report dated June 1, 1999, prepared by an LSSI caseworker, which was referenced by the trial court and presumably was reviewed by the State. That report indicates that respondent-father was housed at Sheridan Correctional Center in Sheridan, Illinois, and was yet to be released. Moreover, the petitions for adjudication of wardship regarding Jasmine N. and Ilsheya N. list respondent-father as the minors' father without an address but do not allege that respondent-father's whereabouts were unknown as is required by section 2—13(2) (705 ILCS 405/2—13(2) (West 1998)).

We granted the State's motion to cite this court's recent decision in *In re Brett R.*, 343 Ill. App. 3d 1210 (2003), as additional authority. In *Brett R.* the respondent-mother contended on appeal that the trial court lacked subject matter jurisdiction to terminate her parental rights to her minor children (*Brett R.*, 343 Ill. App. 3d at 1211) because the State failed to serve the minors' father prior to the adjudication of neglect (*Brett R.*, 343 Ill. App. 3d at 1213). This court rejected the respondent-mother's contention because, although he had not been served, the minors' father had actual notice of the proceedings involving the minors prior to their being adjudicated neglected. *Brett R.*, 343 Ill. App. 3d at 1215. Additionally, we held that the respondent-mother waived the issue of the State's failure to serve the minors' father by failing to raise the issue in the trial court when afforded the opportunity. *Brett R.*, 343 Ill. App. 3d at 1215.

Our decision in *Brett R.* is factually distinguishable from the case at bar and is not controlling. In *Brett R.* the minors' father had actual notice of the proceeding involving the minors prior to the adjudication of neglect (*Brett R.*, 343 Ill. App. 3d at 1215) and therefore the trial court had subject matter jurisdiction over the proceedings. In this case, however, respondent-father had no such notice.

In an effort to preserve its arguments in contemplation of an appeal of this court's ruling to our supreme court, the State argues that the decisions of our supreme court cited above were incorrectly decided and should be reversed. We, of course, are bound by these decisions and, therefore, we hold that the trial court's orders adjudicating Jasmine N. and Ilsheya N. neglected minors and declaring them to be wards of the court are void for lack of jurisdiction.

■ We next turn to the order terminating respondent-father's parental rights and appointing a guardian with the power to consent to his children's adoption. The dispositional order in the neglect proceedings provides guidelines that, if followed, would weigh in

respondent-father's favor at the second stage of the termination proceedings where the best interests of the children are considered. The trial court rightfully considers whether a parent is in compliance with the dispositional guidelines in arriving at its decision of whether to terminate parental rights. See *In re C.W.*, 199 Ill. 2d 198, 217 (2002) ("evidence that a parent substantially completed offered services, or otherwise refrained from prior objectionable conduct following removal of the child, does not somehow absolve or erase the parent's initial failing that triggered State intervention and removal of the child. Rather, such evidence is appropriately considered at the second stage of the termination hearing, at which the court considers whether it is in the best interest of the minor that parental rights be terminated. At that time, the full range of the parent's conduct can be considered"). Regardless of the effect that the lack of notice in the neglect proceedings would have on the findings of unfitness, the lack of notice deprived respondent-father of an opportunity to comply with the guidelines contained in the dispositional orders following the adjudication of neglect. Additionally, respondent-father was deprived of an opportunity to learn what he needed to do to enhance the likelihood that he would be able to preserve his parental rights. In its oral pronouncements terminating respondent-father's parental rights, the trial court did not specify what amount of consideration it gave to respondent-father's conduct during the period after the dispositional order entered in the neglect proceedings. We must assume, therefore, that the trial court took such conduct into account. Thus, respondent-father was denied due process of law. The dispositional hearing on a neglect petition is a vital stage in the process by which parental rights may be terminated and is therefore important to the fairness of any future termination proceeding. *In re G.F.H.*, 315 Ill. App. 3d 711, 715-16 (2000). Accordingly, in this case, where the petition to terminate parental rights followed a neglect petition, the lack of notice of the neglect proceedings rendered the adjudicatory and dispositional orders void, denied respondent-father due process, and tainted the subsequent proceedings resulting in termination of his parental rights. Consequently, the orders terminating respondent-father's parental rights cannot stand. We need not decide whether a parent is deprived of due process by lack of notice where the best-interest determination is made independent of a parent's compliance with the directives in a dispositional order, for example where parent-child reunification is inappropriate (see 705 ILCS 405/1—2(1)(a), 2—13.1 (West 2002)) and family preservation services are, therefore, not offered.

## B. RESPONDENT-MOTHER'S APPEAL
(Appeal No. 2—02—0269)

■ We note that respondent-mother's notice of appeal is from the trial court's order of February 28, 2002, finding her unfit and terminating her parental rights to all three of her children. The notice of appeal references each of the trial court files concerning each of her three children. However, respondent-mother's contention on appeal is based on the lack of service to respondent-father, the father of Jasmine N. and Ilsheya N. and not of Miracle C. Respondent-mother has made no argument regarding the propriety of the order terminating her parental rights to Miracle C. and, therefore, those arguments are waived (188 Ill. 2d R. 341(e)(7)). Consequently, we affirm the trial court's orders finding Miracle C. to be a neglected minor, adjudicating her a ward of the court, and terminating respondent-mother's parental rights to Miracle C.

As to Jasmine N. and Ilsheya N., respondent-mother contends that the failure to serve respondent-father with proper notice of the proceedings rendered the neglect findings and dispositional orders with respect to those minors void. Respondent-mother concludes that her due process rights were violated because the trial court's improper assumption of wardship of the minors tainted the subsequent termination of parental rights proceedings because the trial court found her to be unfit based on her lack of compliance with void dispositional orders. We agree.

The trial court found respondent-mother unfit based on her failure to make reasonable progress toward the return of her children to her within nine months of the dispositional orders. See 750 ILCS 50/1(D)(m) (West 2000). This finding was contingent upon a valid dispositional order, and because the dispositional orders were void, the finding of unfitness based on her lack of compliance with those orders and the client service plans drawn pursuant thereto was unfair and deprived respondent-mother of due process. See *G.F.H.*, 315 Ill. App. 3d at 715-16 (dispositional hearing is a vital stage in the process by which parental rights may be terminated and is therefore important to the fairness of any future termination proceeding). Accordingly, the trial court's order terminating respondent-mother's parental rights to Jasmine N. and Ilsheya N. cannot stand.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Winnebago County terminating respondent-mother's parental rights to her minor child Miracle C. is affirmed. The judgment of the circuit court terminating respondent-mother's parental rights to Jasmine N.

1058

and Ilsheya N. is reversed. The judgment of the circuit court finding Jasmine N. and Ilsheya N. to be neglected minors and adjudicating them wards of the court is reversed. The judgment of the circuit court terminating respondent-father's parental rights to Jasmine N. and Ilsheya N. is reversed.

Appeal No. 2—02—0269, Affirmed in part and reversed in part.
Appeal No. 2—02—0336, Reversed.

McLAREN and BYRNE, JJ., concur.