835 N.E.2d 908 (2005)
359 Ill. App.3d 953
296 Ill.Dec. 555
In re T.A., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
Aaron T. Washington, Respondent-Appellant.)
No. 4-05-0319.
Appellate Court of Illinois, Fourth District.
September 8, 2005.
*909 Scott D. Larson (Court-appointed), Blickhan, Woodworth & Timmerwilke, Quincy, for Aaron T. Washington.
Jon Barnard, State's Attorney, Quincy, Norbert J. Goetten, Director, Robert J. Biderman, Deputy Director, James C. Majors, Staff Atty., State's Attorneys Appellate Prosecutor, for the People.
Justice STEIGMANN delivered the opinion of the court:
In January 2005, the State filed a petition to terminate the parental rights of respondent, Aaron T. Washington, as to his daughter, T.A. (born August 27, 1999). Following a March 2005 hearing on the State's petition, the trial court found respondent unfit. Following a best-interest hearing later that same day, the court found that it would be in T.A.'s best interest to terminate respondent's parental rights. (The court also terminated the parental rights of T.A.'s mother, Patricia Allen; however, she is not a party in this appeal.)
Respondent appeals, arguing that (1) the trial court lacked subject-matter jurisdiction in the neglect proceedings that preceded the State's termination petition because respondent was not made a party to those proceedings; and (2) the court's unfitness and best-interest findings were against the manifest weight of the evidence. We disagree and affirm.

I. BACKGROUND
In May 2003, the State filed a petition for adjudication of wardship, alleging that T.A. was a neglected minor in that Allen had left her in the care of "various individuals who [had] prior involvement with [the Department of Children and Family Services (DCFS)]" and were not appropriate caregivers.
At a July 2003 hearing on the neglect petition, respondent did not appear and Allen admitted to the allegation in the petition. The trial court accepted Allen's admission and adjudicated T.A. neglected (705 ILCS 405/2-3 (West 2002)). The court's written adjudicatory order indicated, in pertinent part, that (1) the court had jurisdiction over Allen because she received service of process by summons, and (2) respondent had "insufficient contact *910 [with T.A.] to require notice" of the proceedings.
Following an August 2003 hearing, the trial court entered a dispositional order (1) adjudicating T.A. a ward of the court, (2) granting guardianship to DCFS, and (3) providing that T.A. remain in Allen's custody. The court further ordered Allen and DCFS not to allow contact between T.A. and respondent. (The trial court later entered an order making DCFS T.A.'s custodian.)
In January 2005, the State filed its petition to terminate the parental rights of Allen and respondent. In pertinent part, the State alleged that respondent was an unfit parent in that he (1) failed to make reasonable progress toward T.A.'s return within nine months of the court's neglect adjudication (750 ILCS 50/1(D)(m)(ii) (West 2004)); (2) failed to make reasonable efforts to correct the conditions that were the basis for T.A.'s removal (750 ILCS 50/1(D)(m)(i) (West 2004)); and (3) failed to maintain a reasonable degree of interest, concern, or responsibility as to T.A.'s welfare (750 ILCS 50/1(D)(b) (West 2004)).
At the March 2005 hearing on the State's petition to terminate respondent's parental rights, April Coats testified that she was T.A.'s DCFS caseworker from July 2003 to October 2004. During that time, Coats knew that respondent was in prison and the court had ordered that T.A. have no contact with him. Coats explained that she did not have a service plan in place for respondent because (1) the court had entered the no-contact order and (2) respondent "had never had any contact with [T.A.] or shown any interest in her." Respondent received a letter from the court in March 2004, informing him that T.A. had become a ward of the court.
DCFS caseworker Jenna Sisk testified that she was assigned to T.A.'s case in October 2004. When she took over the case, she mailed respondent a client-service plan. That plan required respondent to (1) obtain sex-offender treatment and attend parenting classes while in prison (respondent was a registered sex offender), (2) maintain contact with DCFS, (3) sign various releases of information, and (4) upon his release from prison, contact DCFS and provide DCFS with his probation officer's name.
Respondent was released from prison on November 16, 2004, and three days later he stopped by the DCFS office. He talked to Sisk about his DCFS cases (DCFS was also involved with four of respondent's other children) but spoke mainly of his ex-wife, Kartney Washington. Respondent indicated that he had not completed any services while in prison. He did not inquire about T.A., her health, or well-being. Sisk reminded him that a no-contact order was in effect as to T.A.
In mid-December 2004, respondent came to the DCFS office to sign some papers. He did not inquire about T.A. He stopped in the office a few days later and inquired about his children's social security numbers. However, he did not inquire about T.A.'s health or well-being.
Sisk acknowledged that respondent asked for help in enrolling in parenting classes and counseling. However, two parenting class providers denied his application because of the no-contact order as to T.A. Sisk believed that respondent was attending sex-offender treatment. Her contact with respondent was "regular" until early 2005. Between January 2005 and the March 2005 hearing on the State's petition, Sisk's only contact with respondent was at court hearings.
On this evidence, the trial court found that the State had proved by clear and convincing evidence that respondent was *911 unfit on the ground that he failed to maintain a reasonable degree of interest, concern, or responsibility as to T.A.'s welfare (750 ILCS 50/1(D)(b) (West 2004)).
At the best-interest hearing, Sisk testified that T.A. was five years old and had been living with Randy and Kelly Green since August 2004. T.A.'s infant sister was also with the Greens, and T.A. liked to hold her sister and talk to her. Sisk further testified that the Greens were nurturing and loving toward T.A. and were interested in adopting her. T.A. called Kelly "mom" or "mommy" and gave her hugs and kisses. She also called Randy "Daddy" and had told him she loves him. The Greens were very consistent and firm, and T.A. obeyed them.
On this evidence, the trial court found that it was in T.A.'s best interest to terminate respondent's parental rights.
This appeal followed.

II. ANALYSIS

A. The Neglect Proceedings
Respondent first argues that the trial court lacked subject-matter jurisdiction in T.A.'s neglect proceedings because he was not made a party thereto. Respondent further contends that pursuant to In re Miracle C., 344 Ill.App.3d 1046, 280 Ill. Dec. 232, 801 N.E.2d 1177 (2003), respondent was denied his right to due process in the termination-of-parental-rights proceedings because the neglect adjudication was void for lack of jurisdiction. The State concedes this argument, but because we disagree with the Second District's decision in Miracle C., we do not accept the State's concession or agree with respondent's argument.
In Miracle C., the trial court terminated the respondent father's parental rights after finding him unfit on the grounds of (1) abandonment (750 ILCS 50/1(D)(a) (West 2000)) and (2) failure to maintain a reasonable degree of interest, concern, or responsibility as to his children's welfare (750 ILCS 50/1(D)(b) (West 2000)). On appeal, the respondent challenged the trial court's termination of his parental rights based, in part, on the fact that he had not received actual notice of the neglect proceedings that preceded the State's termination petition. The Second District concluded that (1) the failure to notify the respondent rendered void the trial court's orders adjudicating the children neglected and making them wards of the court; (2) as a result of the void orders, the respondent was denied due process in the termination-of-parental-rights proceedings; and (3) the order terminating the respondent's parental rights could not stand. Miracle C., 344 Ill.App.3d at 1052-53, 1056, 280 Ill.Dec. 232, 801 N.E.2d at 1183, 1186. In so concluding, the court reasoned as follows: (1) "The dispositional hearing on a neglect petition is a vital stage in the process by which parental rights may be terminated and is therefore important to the fairness of any future termination proceeding" (Miracle C., 344 Ill.App.3d at 1056, 280 Ill.Dec. 232, 801 N.E.2d at 1186); (2) because the lack of notice of the neglect proceedings deprived the respondent of an opportunity to comply with the guidelines contained in the dispositional orders, he was "deprived of an opportunity to learn what he needed to do to enhance the likelihood that he would be able to preserve his parental rights" (Miracle C., 344 Ill.App.3d at 1056, 280 Ill.Dec. 232, 801 N.E.2d at 1186); and (3) "where the petition to terminate parental rights followed a neglect petition, the lack of notice of the neglect proceedings * * * tainted the subsequent proceedings" (Miracle C., 344 Ill.App.3d at 1056, 280 Ill.Dec. 232, 801 N.E.2d at 1186).
*912 Interestingly, the focus of the Second District's analysis was on the best-interest phase of the termination proceedings. According to the Second District, "[r]egardless of the effect that the lack of notice in the neglect proceedings would have on the findings of unfitness," at the best-interest stage, the trial court "rightfully considers whether a parent is in compliance with the dispositional guidelines." Miracle C., 344 Ill.App.3d at 1056, 280 Ill.Dec. 232, 801 N.E.2d at 1186.
We decline to follow the Second District. Although we agree that the totality of a parent's conduct is a factor that may be considered at the best-interest stage of termination proceedings, in our view, when the trial court's unfitness finding is not based on an assessment of the parent's compliance with the dispositional order in the neglect proceedings (as was the case here), the termination proceeding stands on its own. Accordingly, a flaw in the preceding neglect proceedings  even a flaw that renders void an order entered therein  has no bearing on the subsequent termination case.
In so concluding, we fully recognize that a different result might be required if the respondent had been found unfit under section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2004)). Under that section, an unfitness finding is linked to the respondent's compliance with the directives he received in the neglect proceedings. Thus, the respondent's participation in those proceedings might be viewed as essential to a fair determination of whether he has made reasonable efforts to correct the conditions that led to his child's removal (750 ILCS 50/1(D)(m)(i) (West 2004)) or reasonable progress toward the child's return within a given time period (750 ILCS 50/1(D)(m)(ii), (D)(m)(iii) (West 2004)). However, because this is not the situation in the case before us, we decline to discuss it further.
We also disagree with the Second District's placement of particular importance on the consideration of the respondent's conduct during the best-interest stage of termination proceedings. At that stage of the proceedings, the focus is properly placed on the child, not on the conduct of the parents. See In re D.T., 212 Ill.2d 347, 364, 289 Ill.Dec. 11, 818 N.E.2d 1214, 1227 (2004) (noting that at the best-interest hearing, "the focus shifts to the child"). At the best-interest stage, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." D.T., 212 Ill.2d at 364, 289 Ill.Dec. 11, 818 N.E.2d at 1227. Although a parent's conduct may be considered at that stage, it is but one of many factors that the court considers in determining what is in the child's best interest. As our supreme court wrote in D.T.:
"Once the State proves parental unfitness, the interests of the parent and the child diverge. [Citation.] Thus, at a best-interests hearing, the parent and the child may become adversaries, as the child's interest in a loving, stable[,] and safe home environment becomes more aligned with the State's interest in terminating parental rights and freeing the child for adoption. Although the parent still possesses an interest in maintaining the parent-child relationship, the force of that interest is lessened by the court's finding that the parent is unfit to raise his or her child." D.T., 212 Ill.2d at 363-64, 289 Ill.Dec. 11, 818 N.E.2d at 1226.
Moreover, section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-1 through 7-1 (West 2004)) provides the following factors to be considered when determining a child's best interest:

*913 "(a) the physical safety and welfare of the child * * *;
(b) the development of the child's identity;
(c) the child's background and ties * * *;
(d) the child's sense of attachments, including:
(i) where the child actually feels love, attachment, and a sense of being valued * * *;
(ii) the child's sense of security;
(iii) the child's sense of familiarity;
(iv) continuity of affection for the child;
(v) the least disruptive placement alternative for the child;
(e) the child's wishes and long-term goals;
(f) the child's community ties, including church, school, and friends;
(g) the child's need for permanence * * *;
(h) the uniqueness of every family and child;
(i) the risks attendant to entering and being in substitute care; and
(j) the preferences of the persons available to care for the child." 705 ILCS 405/1-3(4.05) (West 2004).
(Although these factors appear in the Juvenile Court Act, they are also considered in determining a child's best interest during termination-of-parental-rights proceedings. See, e.g., In re Tiffany M., 353 Ill.App.3d 883, 892-93, 289 Ill.Dec. 317, 819 N.E.2d 813, 822 (2004); In re R.L., 352 Ill.App.3d 985, 1001, 288 Ill.Dec. 304, 817 N.E.2d 954, 968 (2004).) Notably  and appropriately  the foregoing list does not include an evaluation of the respondent parent's conduct.
In sum, in termination proceedings under sections of the Adoption Act that do not require that a parent's fitness be determined based on conduct related to the trial court's dispositional orders in neglect proceedings, neither the parent's failure to participate in those proceedings nor the existence of a void order therein requires the trial court to dismiss or deny the State's termination petition. Accordingly, we conclude that in this case, the trial court did not err by proceeding on the State's termination-of-parental-rights petition against respondent.

B. The Trial Court's Unfitness Finding
Respondent next argues that the trial court's finding that he was unfit because he failed to maintain a reasonable degree of interest, concern, or responsibility as to T.A.'s welfare was against the manifest weight of the evidence. We disagree.
The State must prove parental unfitness by clear and convincing evidence, and the trial court's findings must be given great deference because of its superior opportunity to observe the witnesses and evaluate their credibility. We will not reverse a trial court's finding of parental unfitness unless it was contrary to the manifest weight of the evidence, meaning that the correctness of the opposite conclusion is clearly evident from a review of the evidence. In re D.F., 201 Ill.2d 476, 498, 268 Ill.Dec. 7, 777 N.E.2d 930, 942 (2002).
Section 1(D)(b) of the Adoption Act provides, in pertinent part, as follows:
"The grounds of unfitness are any * * * of the following * * *:
* * *
(b) Failure to maintain a reasonable degree of interest, concern[,] or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2002).
*914 Because the language of section 1(D)(b) is in the disjunctive, any of the three elements may be considered on its own as a ground for unfitness. We recognize that in examining allegations under subsection (D)(b), a trial court must (1) focus on a parent's reasonable efforts, not his success, and (2) consider any circumstances that may have hindered his ability to visit, communicate with, or otherwise show interest in his child. However, "a parent is not fit merely because she has demonstrated some interest or affection towards her child." In re Jaron Z., 348 Ill.App.3d 239, 259, 284 Ill.Dec. 455, 810 N.E.2d 108, 125 (2004). Rather, a parent's interest, concern, or responsibility must be reasonable. In re E.O., 311 Ill.App.3d 720, 727, 244 Ill.Dec. 165, 724 N.E.2d 1053, 1058 (2000).
Respondent points to the evidence that (1) he showed an interest in T.A. between October 2004 and the termination proceedings, and (2) as soon as he was released from prison in November 2004, he initiated contact with DCFS. However, the trial court also heard evidence that (1) respondent had never had any contact with T.A. or showed any interest in her and (2) in respondent's postrelease meetings with Sisk, he did not inquire about T.A. Reviewing the evidence in accordance with the applicable standard of review, we conclude that the trial court's unfitness finding was not against the manifest weight of the evidence.

C. The Best-Interest Finding
Last, respondent argues that the trial court's best-interest finding was against the manifest weight of the evidence. We disagree.
Following a finding of parental unfitness, the trial court must give full and serious consideration to the child's best interest. In re G.L., 329 Ill.App.3d 18, 24, 263 Ill.Dec. 607, 768 N.E.2d 367, 372 (2002). At the best-interest stage of termination proceedings, the State bears the burden of proving by a preponderance of the evidence that termination is in the child's best interest. D.T., 212 Ill.2d at 366, 289 Ill.Dec. 11, 818 N.E.2d at 1228. We will not disturb a court's finding that termination is in the children's best interest unless it was against the manifest weight of the evidence. In re M.F., 326 Ill.App.3d 1110, 1115-16, 261 Ill.Dec. 132, 762 N.E.2d 701, 706 (2002).
At the time of the best-interest hearing, T.A. had been living with the Greens for approximately seven months and was doing well. She had bonded with the Greens, and the Greens had expressed an interest in adopting her. Meanwhile, respondent was a long way from being in a position to assume parental responsibility for T.A. In light of this evidence, we conclude that the trial court's decision that it was in T.A.'s best interest to terminate respondent's parental rights was not against the manifest weight of the evidence.

III. CONCLUSION
For the reasons stated, we affirm the trial court's judgment.
Affirmed.
McCULLOUGH and MYERSCOUGH, JJ., concur.