*In re* D.J., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. K.M., Respondent-Appellant).

First District (3rd Division)    No. 1—05—1685

Opinion filed September 28, 2005.

Marv. Raidbard, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Nancy Faulls, and Mary M. Raines, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Robert F. Harris, Kass A. Plain, and Jean M. Agathen, of counsel), guardian *ad litem*.

JUSTICE THEIS delivered the opinion of the court:
Respondent father K.M.'s parental rights as to his son, D.J., were

terminated pursuant to the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1—1 *et seq.* (West 2002)).[1] Eleven months later, respondent filed a motion to quash service and declare the adjudication, disposition, and termination orders void under section 2—1401 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—1401 (West 2002)). Following a hearing, the trial court denied his motion. On appeal, respondent contends that (1) the adjudication and disposition orders are void because the service by publication effectuated by the State was defective and, therefore, the trial court lacked jurisdiction over him; and (2) the order terminating his parental rights is void because the service by publication was defective, depriving the trial court of jurisdiction. For the following reasons, we affirm.

D.J. was born on January 2, 2001, with a controlled substance in his system. On January 8, 2001, the State filed a petition for adjudication of wardship of D.J., stating that D.J.'s father was respondent and his address was unknown. The petition also stated that D.J.'s mother, S.J., had eight other minors in the custody of the Department of Children and Family Services (DCFS) and that three of her other children had been born drug-exposed. Further, the petition provided that respondent had six other children in DCFS custody.

At a temporary custody hearing on January 8, the mother testified that respondent was the father of D.J. The mother did not know where respondent lived, did not know his last address, and had not seen him in six months, but stated that he was not in jail. The assigned caseworker for the minor testified that he had not attempted to find respondent and did not have an address for him. However, the caseworker had had contact with respondent in November 2000 when respondent appeared in court to sign forms to consent to the adoption of one of his children. The DCFS caseworker testified that she did not have sufficient time to notify respondent of the hearing. The court awarded temporary custody of D.J. to DCFS.

At a hearing on January 18, 2001, the caseworker testified that he had not attempted to serve respondent and that the DCFS caseworker was doing a diligent search. The DCFS caseworker testified that she searched for respondent by performing a Public Aid check, asking the mother if she knew of respondent's whereabouts, speaking to the current private agency caseworker assigned to the case, checking the telephone book, calling the Illinois Department of Corrections and Cook County jail, and visiting an area he was known to frequent. The DCFS caseworker testified that she had no information as to

[1]The trial court also terminated the parental rights of D.J.'s mother, S.J., who is not a party to this appeal.

respondent's whereabouts. The State then sought leave to serve respondent by publication, which the court granted after finding due diligence.

The State filed an affidavit for service by publication with the clerk of the court on January 23, 2001. That affidavit named respondent as the father and listed his address as "unknown." Thereafter, the service by publication notice was printed in the Chicago Sun-Times, stating the case number, 01 JA 63, and listing the minor child as D.J. and the mother's name. It further provided that notice was given to respondent that an adjudicatory hearing would be held on the State's petition to have D.J. declared a ward of the court and for other relief under the Act, and provided the date, time and place of this hearing. The notice also cautioned respondent:

> "UNLESS YOU appear you will not be entitled to further written notices or publication notices of the proceedings in this case, including the filing of an amended petition or a motion to terminate parental rights."

The court defaulted respondent on April 24, 2001, when he failed to appear. Two days later, the court adjudicated D.J. abused and neglected and made him a ward of the court. At the August 23, 2001, dispositional hearing, the caseworker testified that he last had contact with respondent in May 2001 when respondent stated that he would attend the court hearing on June 1 and sign a consent for adoption of D.J. At the August 23 hearing, the court found respondent unwilling to care for D.J. and placed D.J. under the guardianship of DCFS.

On October 6, 2003, the State filed a supplemental petition for the appointment of a guardian with the right to consent to adoption, seeking to have both parents' rights terminated. This petition was filed with the same case number listed in the petition for adjudication of wardship and in the service by publication of that petition. Respondent's last known address was listed both as 5707 S. Honore and as 1227 S. Christiana in Chicago. On November 6, 2003, the court allowed the State to serve respondent by alias summons. The sheriff attempted to serve respondent at these addresses several times to no avail. The caseworker then learned of an address on Central Park in Chicago which respondent frequented and sent certified mail to that address and the Christiana address, with no response. On January 7, 2004, the court granted the State leave to publish to respondent and to serve an alias summons at the Central Park address. Service was then attempted at that address, but respondent was not found.

On January 21, 2004, the State filed an affidavit for service by publication with the clerk of the court, which contained the same language as the first publication, but listed respondent's last known

address as 1658 S. Central Park in Chicago. Publication was made in the January 26, 2004, edition of the Chicago Tribune, with substantially the same language as in the previous publication. When respondent failed to appear at the April 5, 2004, hearing, the court found him in default. Following unfitness and best interests hearings, the trial court terminated the parental rights of respondent and the mother on April 22, 2004.

On March 15, 2005, respondent, through counsel, filed a "motion to stay termination hearing order" and a motion to quash service and declare the adjudication, disposition and termination hearing orders void under section 2—1401 of the Code. 735 ILCS 5/2—1401 (West 2004). In his section 2—1401 motion, respondent argued that both affidavits filed by the State to obtain service by publication were defective, and therefore, the adjudication, disposition and termination orders were void. Respondent appeared in court that day with Chandra Williams, a relative, who had a power of attorney for medical and financial matters over respondent due to a head injury respondent sustained in December 2004. Williams informed the court that she wished to adopt "these kids," referring to D.J. and at least one of his siblings. At a later hearing on this motion, the court noted that respondent had indicated that "he was no longer essentially himself" since the head injury and respondent's attorney agreed, stating that it was "apparent that [respondent] has some diminished intellectual capacity." Both the State and the office of the Public Guardian filed responses objecting to respondent's section 2—1401 motion. Following a hearing, the trial court denied both of respondent's motions on April 25, 2005. Respondent then filed a timely notice of appeal.

On appeal, respondent argues only that the trial court improperly denied his section 2—1401 motion. He first asserts that the trial court's adjudication and disposition orders are void because the service by publication effectuated by the State was defective. Specifically, he contends that the affidavit filed with the clerk of the court to obtain service by publication failed to comply with section 2—16(2) of the Act, and thus, the trial court did not have jurisdiction over him.

■ A void order or judgment is one entered by a court without jurisdiction of the subject matter or the parties or by a court that lacks the inherent power to make or enter the order involved. *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 379-80, 827 N.E.2d 422, 428 (2005). Proper service of summons is required to establish *in personam* jurisdiction. *In re Abner P.*, 347 Ill. App. 3d 903, 906, 807 N.E.2d 1145, 1148 (2004). Whether a judgment is void is a question of law, which we review *de novo*. *People v. Rodriguez*, 355 Ill. App. 3d 290, 293-94, 823 N.E.2d 224, 228 (2005). See also *Ford Motor Credit Co.*, 214 Ill. 2d at 379, 827 N.E.2d at 427.

■ Service by publication is governed by section 2—16 of the Act, which provides, in relevant part:

"Where a respondent's usual place of abode is not known, a diligent inquiry shall be made to ascertain the respondent's current and last known address. *** If, after diligent inquiry made at any time within the preceding 12 months, the usual place of abode cannot be reasonably ascertained, or if respondent is concealing his or her whereabouts to avoid service of process, petitioner's attorney shall file an affidavit at the office of the clerk of court in which the action is pending showing that respondent on due inquiry cannot be found or is concealing his or her whereabouts so that process cannot be served. The affidavit shall state the last known address of the respondent. The affidavit shall also state what efforts were made to effectuate service." 705 ILCS 405/2—16(2) (West 2000).

Here, defendant is not arguing that the State failed to conduct a diligent search for him or that the publication itself was deficient. Rather, he contends only that the affidavit filed with the clerk was fatally defective because it failed to state "what efforts were made to effectuate service" in contravention of section 2—16(2).

The affidavit at issue, filed on January 23, 2001, provided:

"Each respondent named below cannot be found within this state or left this state and cannot be located, so that process cannot be served upon him either personally or by certified mail. The present address of each respondent named below cannot be ascertained upon diligent inquiry. The last known address of each respondent named below is."

The affidavit named respondent and listed his address as "unknown."

In support of his argument that the failure to explain what efforts were made to effectuate service on respondent deprived the trial court of jurisdiction over him, respondent relies almost exclusively on *In re Miracle C.*, 344 Ill. App. 3d 1046, 801 N.E.2d 1177 (2003). However, we find that case distinguishable. In *Miracle C.*, the respondent father was notified of the adjudicatory proceedings by publication and later was defaulted when he failed to appear. The father did appear in court nearly two years later after the State filed a petition to terminate his parental rights. *Miracle C.*, 344 Ill. App. 3d at 1049, 801 N.E.2d at 1180. After the trial court terminated his rights, the father appealed. On appeal, this court *sua sponte* addressed whether the trial court had jurisdiction over the father at the adjudicatory stage based on the service by publication. *Miracle C.*, 344 Ill. App. 3d at 1053, 801 N.E.2d at 1183. The court noted that the State had failed to file any affidavit in support of its request to serve the father by publication, and thus, notice by publication should not have been permitted. Further, this

court found that "the trial court was not apprised, by any other means, that a diligent search for respondent-father was conducted." *Miracle C.*, 344 Ill. App. 3d at 1054, 801 N.E.2d at 1184. Most importantly, the State conceded that the father had not been properly served. Based on these three findings, the *Miracle C.* court held that the trial court's orders adjudicating the children neglected minors and declaring them wards of the court were void for lack of jurisdiction, and thus, the trial court's order terminating the father's parental rights was also void. *Miracle C.*, 344 Ill. App. 3d at 1055-56, 801 N.E.2d at 1185-86. See also *In re Brianna B.*, 334 Ill. App. 3d 651, 659, 778 N.E.2d 724, 731 (2002) (finding service by publication to an unknown father defective because the State never filed an affidavit).

■ In the present case, unlike in *Miracle C.* and *Brianna B.*, the State did file an affidavit in support of service by publication, as described above. Further, in this case, the State has not conceded that respondent was improperly served. Moreover, this trial court was apprised, through sworn testimony, of the State's due diligence in attempting to find respondent's address and its efforts to effectuate service on respondent. At the January 18, 2001, hearing, the caseworker testified that he had not yet attempted to serve respondent. The DCFS caseworker testified that she searched for respondent by performing a Public Aid check, asking the mother if she knew of respondent's whereabouts, speaking to the current private agency caseworker assigned to the case, checking the telephone book, calling the Illinois Department of Corrections and Cook County jail, and visiting an area he was known to frequent. She also testified that she had no information as to respondent's whereabouts. Based on this testimony, the trial court knew of the many efforts the State had made to find respondent and that the State had not made any effort to serve respondent because it could not find his address. Accordingly, *Miracle C.* and *Brianna B.* are distinguishable and do not warrant the same result in this case.

Thus, we find that the affidavit filed by the State on January 23, 2001, sufficiently complied with section 2—16(2) of the Act where it stated that respondent could not be located within the state so that process could not be served upon him, his last known address was unknown and his present address could not be ascertained upon diligent inquiry. Further, the trial court found, after hearing sworn testimony, that the State had made due diligence to find respondent and the court was aware that the State had not made any efforts to serve him. Here, it was obvious from the face of the affidavit and testimony that the State had not made any efforts to effectuate service on respondent because it never had an address for him. To insist that

the State include this sentence in the affidavit in this case would be to require an empty formality. Accordingly, we find that the trial court obtained personal jurisdiction over respondent by publication prior to the adjudicatory and dispositional orders and, thus, these orders are not void.

■ Defendant next contends that the order terminating his parental rights is void. He claims that the affidavit filed by the State to obtain service by publication at this stage of the process was defective and, thus, failed to provide the trial court with jurisdiction over him. After the adjudicatory and dispositional orders, the State filed a petition to terminate respondent's rights on October 6, 2003. After several attempts to personally serve respondent failed, the State sought, and was granted, leave to serve respondent by publication and filed an affidavit with the clerk in support of this method of service on January 21, 2004. Respondent argues that this second affidavit was deficient in that it similarly failed to state what efforts were made to effectuate service.

Based on this court's opinion in *Abner P.*, defendant's argument is without merit. *Abner P.*, 347 Ill. App. 3d at 904, 807 N.E.2d at 1146. In *Abner P.*, the respondent father was personally served with summons after the State filed petitions for the adjudication of wardship of his children. The summons contained language informing him that he would not be entitled to further notice or publication of proceedings in the case, including the filing of an amended petition or a motion to terminate parental rights. *Abner P.*, 347 Ill. App. 3d at 904, 807 N.E.2d at 1146. The father personally appeared at the adjudication hearing and at a later hearing. Two and a half years later, the State filed supplemental petitions for the appointment of a guardian with the right to consent to the adoptions of the children, seeking to terminate the father's rights. These petitions were filed with the same case numbers listed on the summons that was served on the father in the adjudication phase. *Abner P.*, 347 Ill. App. 3d at 905, 807 N.E.2d at 1147. After attempting to serve the father personally with these petitions, the State filed an affidavit for service by publication. When the father did not appear at the termination hearing, the trial court found him in default and terminated his rights. The father later filed a motion seeking to quash the service by publication and vacate the void termination order, which the trial court treated as a section 2—1401 motion before denying it. *Abner P.*, 347 Ill. App. 3d at 905-06, 807 N.E.2d at 1147-48.

On appeal, the *Abner P.* court rejected the father's argument that it was necessary for the trial court to reestablish personal jurisdiction over him upon the inception of the termination phase of the case. The

court reasoned that the filing of a petition to terminate parental rights does not initiate an entirely new proceeding within an existing case number. *Abner P.*, 347 Ill. App. 3d at 908, 807 N.E.2d at 1149. Because the Act does not require notice of the filing of a petition to terminate parental rights upon a respondent who has been properly served, it is also not necessary to reissue a summons for, or to republish to, that party upon the filing of such a petition. *Abner P.*, 347 Ill. App. 3d at 908, 807 N.E.2d at 1149. Further, because a new proceeding is not involved and because the termination phase of a juvenile case proceeds under the same case number as the adjudication phase of the case, jurisdiction over a respondent need not be reestablished once it has been properly established in the existing juvenile case. *Abner P.*, 347 Ill. App. 3d at 908, 807 N.E.2d at 1149-50.

In this case, as discussed above, the trial court obtained personal jurisdiction over respondent at the adjudicatory phase of the proceeding after respondent was properly served by publication. That publication notice, similar to the personal summons in *Abner P.*, contained language informing respondent that he would not be entitled to further notice or publication of proceedings in this case, including the filing of an amended petition or a motion to terminate parental rights. Therefore, the State did not need to re-serve respondent when it filed a petition to terminate his parental rights. Accordingly, the trial court's order terminating respondent's parental rights was not void for lack of jurisdiction and the trial court properly denied respondent's section 2—1401 motion.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

KARNEZIS and ERICKSON, JJ., concur.