No. 2--06--0425                                            filed: 11/28/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re ANTWAN L. and CHARISMA L., | ) | Appeal from the Circuit Court |
| Minors | ) | of De Kalb County. |
| | ) | |
| | ) | Nos. 02--JA--10 |
| | ) | 02--JA--11 |
| | ) | |
| (The People of the State of | ) | Honorable |
| Illinois, Petitioner-Appellee, | ) | Kurt P. Klein, |
| v. Juan S., Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Respondent, Juan S., appeals an order terminating his parental rights to his children, Antwan L. and Charisma L. The State filed a petition for an adjudication of neglect on January 28, 2002, but the State did not know respondent's whereabouts at that time. The State attempted to perfect service by publication, but acknowledged a lapse in procedure by submitting a second publication. The State did not perfect service on respondent (by publication or otherwise) until August 30, 2004, which was 27 months after the petition for adjudication of neglect was filed.

On February 17, 2006, the trial court found respondent to be unfit for failing to maintain a reasonable degree of interest, concern, or responsibility toward the minors' welfare (see 750 ILCS 50/1(D)(b) (West 2004)) and for failing to make reasonable efforts to correct the conditions that were the basis for their removal (see 750 ILCS 50/1(D)(m)(i) (West 2004)) or to make reasonable progress

toward their return home within nine months after they were adjudicated neglected (see 750 ILCS 50/1(D)(m)(ii) (West 2004)).

On appeal, respondent does not challenge any of the substantive findings of the trial court. Instead, his argument is procedural. Respondent argues that his due process rights were violated because the State failed to diligently inquire into his whereabouts or adhere to the affidavit filing procedure required for serving notice by publication. Citing our decision in In re Miracle C., 344 Ill. App. 3d 1046 (2003), respondent thus contends that the adjudication of neglect, the dispositional order, and the orders finding him unfit and terminating his parental rights are all void because the inadequate service divested the trial court of jurisdiction. The State responds that respondent waived notice of the proceedings and the trial court obtained jurisdiction when he appeared in court, accepted appointment of counsel, and participated in the proceedings. Because we conclude that (1) the State's petition vested the trial court with subject matter jurisdiction and (2) respondent waived any challenge to the trial court's personal jurisdiction over him, we reject respondent's claim of defective notice and affirm the termination of his parental rights.

FACTS

For the most part, the facts are not disputed. The State simultaneously petitioned to terminate the parental rights of respondent and the minors' mother, Kristie L., but she is not involved in this appeal. The State became involved with the family when a December 29, 2001, hotline caller reported that Kristie had brought Charisma to the hospital emergency room that day. Charisma had fallen down a flight of stairs after Kristie's boyfriend had left the girl unattended. Charisma had old bruises in various stages of healing, and she was released from the hospital two days later. The Department of Children and Family Services (DCFS) established a safety plan for the minors on December 29, 2001, at which time Kristie informed the DCFS investigator that respondent was the

father of both children and that he was "somewhere" in Aurora. Kristie stated that she had not seen respondent for six months and did not know how to contact him. Kristie agreed to reside in a women's shelter and to avoid her boyfriend. Kristie violated the safety plan, and the minors were placed in protective custody on January 24, 2002.

On January 28, 2002, the State filed a petition for an adjudication of neglect, alleging that the biological father was unknown. On February 8, 2002, Kristie appeared in court and identified respondent as the minors' father and said that he resided in Aurora, but she did not specify an address or telephone number. Respondent had not been served with a summons or notified of the proceedings by certified mail, and the trial court ordered the State to notify him of the proceedings by publication. Notice was purportedly published in the Midweek Newspaper on February 20, February 27, and March 6, 2002. On March 8, 2002, the trial court noted in an order that the State had served respondent by publication. However, the record shows that the State did not file an affidavit certifying that a diligent inquiry into respondent's whereabouts had been completed by that time.

On April 26, 2002, the trial court adjudicated the minors neglected, made them wards of the court, and placed them in the custody of DCFS. The adjudicatory order indicates that respondent did not appear at the hearing and that the trial court entered a default judgment against him.

On May 24, 2002, the trial court entered a dispositional order. The court found that respondent was "unfit, unable, and unwilling to care for, protect, train, educate, supervise or discipline the minor[s] and placement with [him] is contrary to the health, safety, and best interests of the minor[s] because his whereabouts are unknown and he failed to respond to publication." The court granted DCFS continued custody and guardianship with the right to place the minors. The court further ordered "the parents" to cooperate with DCFS and Catholic Charities, complete

parenting classes and counseling, maintain living arrangements free from safety hazards, keep utilities current, and verify attendance of self-help 12-step programs at least twice per week.

On July 23, 2003, a DCFS client service plan was created that stated that the caseworker was diligently searching for respondent. The caseworker sent a letter to respondent's last known address, and the letter was returned.

On October 20, 2003, Jennifer O'Brien of Catholic Charities purportedly signed an "Affidavit of Diligent Search to Locate Missing Parent" in which she stated that her search for respondent had been unsuccessful. However, the document was not filed in the circuit court at that time.

On October 28, 2003, the State moved to terminate both parents' parental rights and for power to consent to the adoption of the minors. The petition alleged that respondent is the father of the minors but that his address was unknown.

On August 30, 2004, the State filed an "Affidavit To Support Notice by Publication," and notice was published in the Daily Chronicle Newspaper on September 2, 8, and 12. On September 16, 2004, the State finally filed O'Brien's one-year-old affidavit in which she stated that she had diligently but unsuccessfully searched for respondent.

On September 17, 2004, Kristie, the mother, moved to dismiss the termination petition for lack of subject matter jurisdiction. The trial court denied the motion.

There appears to be some confusion over when respondent first appeared in the circuit court. In its brief, the State asserts that "during the neglect phase of the proceedings, the respondent appeared in court prior to the actions taken to terminate his parental rights." Respondent concedes that he appeared in court, accepted appointment of counsel, and participated in the proceedings. However, the parties' briefs shed little light on the precise timing of respondent's participation.

Our review of the record discloses a motion to establish paternity filed on September 28, 2004, in which the State asserted that "[respondent's] address ha[d] been unknown until recently and that [respondent] is presently in custody at the Kendall County jail." In the motion, the State requested that respondent be brought to court to establish his paternity. On October 1, 2004, the trial court entered a written finding that respondent was residing in the jail, appointed counsel to represent him, and ordered respondent to be brought to the next hearing, which was scheduled for October 29, 2004. The trial court entered an order on October 29, 2004, indicating respondent's presence. We have found no mention of respondent appearing before that date, and in fact, nearly every previous order that refers to respondent points out his absence. Thus, the record before us indicates that respondent first appeared in the circuit court on October 29, 2004.

On April 6, 2005, the State filed an amended petition to terminate parental rights, alleging depravity and repeated incarceration as additional bases of respondent's unfitness. On February 17, 2006, the trial court found respondent unfit for failing to maintain a reasonable degree of interest, concern, or responsibility toward the minors' welfare (see 750 ILCS 50/1(D)(b) (West 2004)) and for failing to make reasonable efforts to correct the conditions that were the basis for their removal (see 750 ILCS 50/1(D)(m)(i) (West 2004)) or to make reasonable progress toward their return home within nine months after they were adjudicated neglected (see 750 ILCS 50/1(D)(m)(ii) (West 2004)). On April 7, 2006, the trial court found that it was in the minors' best interests to terminate respondent's parental rights. This timely appeal followed.

## ANALYSIS

Respondent appeals from the termination of his parental rights. The Juvenile Court Act of 1987 (the Juvenile Court Act) provides a two-stage process for terminating parental rights involuntarily. 705 ILCS 405/2--29(2) (West 2004). The State must first prove parental unfitness by

clear and convincing evidence and then show that the child's best interests are served by severing parental rights. In re Adoption of Syck, 138 Ill. 2d 255, 277 (1990). Section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2004)) lists various grounds under which a parent may be found unfit, any of which standing alone may support such a finding. See In re D.F., 332 Ill. App. 3d 112, 117, 125 (2002).

On appeal, respondent argues that his due process rights were violated because the State failed to diligently inquire into his whereabouts or adhere to the affidavit filing procedure required for serving notice by publication. Respondent thus contends that the adjudication of neglect, the dispositional order, and the orders finding him unfit and terminating his parental rights are all void because the inadequate service divested the trial court of jurisdiction. Respondent relies heavily upon Miracle C., in which we held that (1) the lack of notice to a respondent-father before the adjudicatory phase of the proceedings rendered void, for lack of jurisdiction, the orders finding his children neglected and adjudicating them wards of the court and (2) the void adjudicatory and dispositional orders denied the respondent-father due process in the termination proceedings. Thus, we reversed the orders finding the children neglected, adjudicating them wards of the court, and terminating the respondent-father's parental rights. Miracle C., 344 Ill. App. 3d at 1052-53.

The State responds that Miracle C. was wrongly decided and should be abandoned because it (1) misinterprets jurisdictional principles; (2) is inconsistent with the waiver of service of summons provision of section 2--15 of the Juvenile Court Act; and (3) is less persuasive than In re T.A., 359 Ill. App. 3d 953 (2005), where the Appellate Court, Fourth District, criticized and departed from our holding in Miracle C.

Due process requires that notice in juvenile proceedings be equivalent to that constitutionally required in civil and criminal cases. In re Application of Gault, 387 U.S. 1, 33, 18 L. Ed. 2d 527,

549, 87 S. Ct. 1428, 1446-47 (1967); In re C.R.H., 163 Ill. 2d 263, 269 (1994); Miracle C., 344 Ill. App. 3d at 1053 (a minor and his or her parents have a constitutional right of due process to receive adequate notice of a juvenile proceeding).

The Juvenile Court Act provides that, when a petition is filed, the clerk of the court shall issue a summons to the minor's legal guardian or custodian and to each person named as a respondent. 705 ILCS 405/2--15 (West 2004). Here, the State concedes that no summons was served on respondent before he appeared. However, section 2--15 provides that service of a summons may be waived as follows:

"(7) The appearance of the minor's legal guardian or custodian, or a person named as a respondent in a petition, in any proceeding under this Act shall constitute a waiver of service of summons and submission to the jurisdiction of the court, except that the filing of a motion authorized under Section 2--301 of the Code of Civil Procedure [735 ILCS 5/2--301 (West 2004) (prescribing objection to court's jurisdiction over the party's person)] does not constitute an appearance under this subsection. A copy of the summons and petition shall be provided to the person at the time of his appearance.

(8) Notice to a parent who has appeared or been served with summons personally or by certified mail, and for whom an order of default has been entered on the petition for wardship and has not been set aside shall be provided in accordance with Supreme Court Rule 11. Notice to a parent who was served by publication and for whom an order of default has been entered on the petition for wardship and has not been set aside shall be provided in accordance with this Section and Section 2--16." 705 ILCS 405/2--15 (West 2004).

Section 2--16 of the Juvenile Court Act sets forth the procedure for service by publication. When a respondent's usual place of abode is not known, a diligent inquiry shall be made to ascertain

the respondent's current and last known address. 705 ILCS 405/2--16(2) (West 2004). If the diligent inquiry does not reveal the party's location, the Juvenile Court Act requires the petitioner's attorney to file an affidavit showing that the respondent, on due inquiry, cannot be found or is concealing his or her whereabouts so that process cannot be served. 705 ILCS 405/2--16(2) (West 2004). The affidavit shall state the last known address of the respondent and the efforts that were made to effectuate service. 705 ILCS 405/2--16(2) (West 2004). Publication must then be made once in a newspaper of general circulation in the county where the action is pending. 705 ILCS 405/2--16(2) (West 2004). In cases of notice by publication, "the court may not enter any order or judgment against any person who cannot be served with process other than by publication unless notice by publication is given or unless that person appears." (Emphasis added.) 705 ILCS 405/2--16(2) (West 2004). If the respondent fails to appear after publication has been properly effectuated, the trial court shall enter any appropriate orders of default against the respondent. 705 ILCS 405/2--21(1) (West 2004).

Our primary objective in construing sections 2--15 and 2--16 is to give effect to the intent of the legislature, presuming the legislature did not intend to create absurd, inconvenient, or unjust results. In re Madison H., 215 Ill. 2d 364, 372 (2005). We look first to the plain language of the statute because statutory language is the most reliable indication of the legislature's intent. Madison H., 215 Ill. 2d at 372.

Here, after an inadequate attempt at service by publication, the State filed the affidavit of diligent search 24 months after the adjudicatory order was entered and respondent was defaulted. Thus, the State concedes that it failed to timely serve respondent by publication as prescribed by section 2--16 of the Juvenile Court Act. See In re Brianna B., 334 Ill. App. 3d 651, 659 (2002)

(finding service by publication to an unknown father defective because the State never filed an affidavit).

However, the State argues that respondent's appearance at the subsequent termination proceedings resulted in his waiver of service of summons under section 2--15. As discussed, the record indicates that respondent first appeared on October 29, 2004, which was 26 months after the adjudicatory order was entered and respondent was defaulted. The record is devoid of any evidence that respondent filed a motion pursuant to section 2--301 of the Code of Civil Procedure at any pertinent time. Respondent, as the appellant, has the burden of providing a complete record on appeal. See In re Edward T., 343 Ill. App. 3d 778, 793 (2003), citing Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92 (1984). To the extent that the record is incomplete, we presume that respondent failed to object to the court's personal jurisdiction over him (see 735 ILCS 5/2--301 (West 2004)) and that his appearance is not exempt from the waiver provision of section 2--15(7) of the Juvenile Court Act.

Respondent answers the State's statutory analysis with the vague denial that the "argument is incorrect." Respondent also cites the portion of section 2--16(2) that prohibits the court from entering "any order or judgment against any person who cannot be served with process other than by publication unless notice by publication is given or unless that person appears." (Emphasis added.) 705 ILCS 405/2--16(2) (West 2004). Respondent does not explain how his appearance would operate as anything but a waiver of service by publication under section 2--16(2). Instead, respondent relies upon the constitutional discussion in Miracle C., and by doing so, he essentially contends that the statutorily prescribed waiver of service of summons (see 705 ILCS 405/2--15(7) (West 2004)) and waiver of service by publication (see 705 ILCS 405/2--16(2) (West 2004)) violate his constitutional right to due process.

In Miracle C., the respondent-father neither received notice of nor appeared for adjudicatory proceedings, but he later appeared after the State petitioned to terminate his parental rights. The trial court terminated the respondent's parental rights after finding him unfit on the grounds of (1) abandonment (750 ILCS 50/1(D)(a) (West 2000)) and (2) failure to maintain a reasonable degree of interest, concern, or responsibility as to his children's welfare (750 ILCS 50/1(D)(b) (West 2000)).

On appeal, the respondent challenged the trial court's termination of his parental rights, based, in part, on the State's failure to serve him actual notice of the neglect proceedings that preceded the termination petition. We concluded that (1) the failure to notify the respondent rendered void the trial court's orders adjudicating the children neglected and making them wards of the court; (2) as a result of the void orders, the respondent was denied due process in the termination-of-parental-rights proceedings; and (3) the order terminating the respondent's parental rights must be reversed. Miracle C., 344 Ill. App. 3d at 1052-53, 1056. In so concluding, we reasoned as follows: (1) "[t]he dispositional hearing on a neglect petition is a vital stage in the process by which parental rights may be terminated and is therefore important to the fairness of any future termination proceeding" (Miracle C., 344 Ill. App. 3d at 1056); (2) because the lack of notice of the neglect proceedings deprived the respondent of an opportunity to comply with the guidelines contained in the dispositional orders, he was "deprived of an opportunity to learn what he needed to do to enhance the likelihood that he would be able to preserve his parental rights" (Miracle C., 344 Ill. App. 3d at 1056); and (3) "where the petition to terminate parental rights followed a neglect petition, the lack of notice of the neglect proceedings *** tainted the subsequent proceedings" (Miracle C., 344 Ill. App. 3d at 1056).

The State argues that respondent and Miracle C. confuse subject matter jurisdiction and personal jurisdiction. The State cites In re Marriage of Seffren, 366 Ill. App. 3d 628 (2006), in which the Appellate Court, First District, stated that "[s]ubject matter jurisdiction is derived from Article

VI of the Illinois Constitution (Ill. Const. 1970, art. VI) and refers to a court's power to hear and determine cases of the general class or category to which the proceedings belong. [Citations.] Personal jurisdiction, on the other hand, is not conferred by any constitutional grant; rather, a court's jurisdiction over a person is conferred by the service of summons or by the filing of an appearance." Seffren, 366 Ill. App. 3d at 635. Thus, the State contends, the trial court first obtained subject matter jurisdiction over the matter at the time the State filed its original petition, and the court later obtained personal jurisdiction over respondent when he appeared on October 29, 2004.

Miracle C. rejected the jurisdictional argument that the State presents here. We concluded in Miracle C. that, in termination of parental rights cases, the failure to notify a respondent-parent renders void the trial court's orders adjudicating the children neglected and making them wards of the court. We relied upon C.R.H., where our supreme court held that " '[a] pleading in a juvenile proceeding that does not name and notify necessary respondents, which includes parents or a legal guardian, fails to invoke the jurisdiction of the court and thereby renders its orders void.' " Miracle C., 344 Ill. App. 3d at 1054, quoting C.R.H., 163 Ill. 2d at 271.

At least twice, the appellate court has interpreted C.R.H. to mean that "[t]he failure to name and serve a necessary party in a juvenile proceeding raises the question, not of personal jurisdiction over that party, but of the subject matter jurisdiction of the court." In re Rodney T., 352 Ill. App. 3d 496, 501 (2004) (First District); see also Miracle C., 344 Ill. App. 3d at 1054 (Second District). However, C.R.H. used the term "jurisdiction" generally and did not distinguish between personal and subject matter jurisdiction. Moreover, C.R.H. did not address whether the circuit court's subject matter jurisdiction in a juvenile proceeding is derived from the statute or elsewhere. Thus, it is unclear whether C.R.H. intended to hold that inadequate service of process affects personal

jurisdiction or subject matter jurisdiction. A more recent supreme court case, Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325 (2002), sheds light on the issue.

In Belleville Toyota, the court unambiguously stated that "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." Belleville Toyota, 299 Ill. 2d at 334. Section 9 of article VI confers subject matter jurisdiction over all "justiciable matters" (Ill. Const. 1970, art. VI, §9), which are controversies appropriate for review by the court, in that they are definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests. Belleville Toyota, 299 Ill. 2d at 334-35. To invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable matter. Belleville Toyota, 299 Ill. 2d at 334.

Belleville Toyota suggests that noncompliance with a statute, such as the notice provision of the Juvenile Court Act, does not divest the circuit court of subject matter jurisdiction, because that jurisdiction is conferred by our state constitution. To harmonize Belleville Toyota and C.R.H., we conclude that the "jurisdiction" to which C.R.H. referred is personal jurisdiction rather than subject matter jurisdiction. Thus, we interpret C.R.H. as holding that inadequate service of process divests the circuit court of personal jurisdiction rather than subject matter jurisdiction, which is invoked by the filing of the original petition. Respondent appeared on October 29, 2004, without filing a motion pursuant to section 2--301 of the Code of Civil Procedure at any pertinent time to challenge the court's personal jurisdiction, and therefore, we hold that he waived that issue. In light of our disposition of the case on the grounds of waiver of personal jurisdiction, we need not address the State's suggestion that we adopt T.A., which was decided by the Fourth District. However, to the

extent that <u>Miracle C.</u> and its discussion of subject matter jurisdiction is inconsistent with this opinion,

<u>Miracle C.</u> is overturned.

For the preceding reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

GROMETER, P.J., and O'MALLEY, J., concur.