2019 IL App (2d) 190637-U
No. 2-19-0637
Order filed November 25, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* D.B., | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| a minor. | ) | |
| | ) | |
| | ) | No. 17-JA-109 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee v. Lerashio G., | ) | Mary Linn Green |
| Respondent-Appellant) | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in finding respondent unfit and that it was in D.B.'s best interests to terminate his parental rights.

¶ 2                                    I. BACKGROUND

¶ 3    The minor, D.B., was born in December 2015 to his mother, Aaliyah W. D.B.'s birth certificate does not list his father, but Joshua B. was named as the putative father when the State filed its two-count neglect petition on April 11, 2017. At the time of the neglect petition, Aaliyah W. had four other children in addition to D.B.: N.W. (born January 2009), Z.B. (born January 2011), N.W. (born February 2015), and J.W. (born October 2016). Joshua B. was also the father

of D.B.'s sibling, Z.B., but his rights were terminated in December 2014. Z.B. was adopted by Aaliyah W.'s mother, Diane H. Count I of the State's petition alleged D.B. to be a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act (Act). Count II alleged D.B. to be a neglected minor pursuant to section 2-3(1)(a) of the Act. On May 3, 2017, as D.B.'s location was unknown, the trial court issued juvenile custody warrant for him after finding that the circumstances of Aaliyah W.'s home environment were dangerous.

¶ 4    Following the return of the juvenile custody warrant, a shelter care hearing was held on June 5, 2017, wherein respondent, Lerashio G., voluntarily acknowledged paternity of N.W. Joshua B. told the trial court that he had no reason to believe that he was the father of D.B. The Department of Children and Family Services (DCFS) provided the trial court with a statement of facts detailing their reasons for involvement in the case and placing the minor children into protective custody. The report indicated that DCFS received reports stating concerns that Aaliyah W. was (1) not following through with routine medical care for the minor children who were in need of a physician's care; (2) using cocaine and marijuana; (3) not properly feeding her eight-month old infant child; (4) fleeing and avoiding DCFS while refusing to take the children to a physician; (5) not providing the children with food or clothing in her home to the extent that the children appeared to be very skinny, never having any clothes on; and (6) getting involved in a physical altercation with a neighbor in front of the children that required police intervention. Additionally, the report stated that Z.B. was allowed by Diane H. to move back into Aaliyah W.'s home with knowledge that Aaliyah W. had failed to cure the conditions that led to Z.B.'s removal. Diane H. was also the legal guardian of N.W. but allowed her to be cared for by Aaliyah W. while holding the belief that she was unfit. Z.B. was seven years old at the time of the report and was not enrolled in any type of school program. N.W. was enrolled in a school program but missed over

100 days in both the current and prior school years. The trial court granted emergency temporary custody of D.B. to DCFS. DCFS was granted discretion to place D.B. in traditional foster care or with a responsible relative.

¶ 5 On June 8, 2017, Joshua B. filed a final and irrevocable surrender to DCFS of D.B. for purposes of adoption, thereby surrendering his parental rights.

¶ 6 On January 18, 2018, a petition was filed on behalf of D.B. to declare respondent his biological father following a DNA test revealing the same. The trial court found respondent to be D.B.'s biological father. That same day, following a hearing, the trial court adjudicated D.B. an abused or neglected minor and entered an amended order of adjudication by agreement of respondent and Aaliyah W. Count I of the neglect petition was dismissed and respondent accepted Aaliyah's factual stipulation to count II, and the parents agreed to receive services based on both counts. A dispositional order was entered by agreement granting further guardianship and custody of D.B. to DCFS.

¶ 7 On April 29, 2019, the State filed a motion for termination of respondent's parental rights and power to consent to D.B.'s adoption. The three-count petition alleged respondent to be an unfit parent for (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to D.B.'s welfare pursuant 750 ILCS 50/1(D)(b); (2) failure to make reasonable efforts to correct the conditions that caused D.B. to be removed during two nine-month periods (January 18, 2018, to October 18, 2018, and/or September 5, 2018, to March 5, 2019) after the January 18, 2018, amended order of adjudication pursuant to 750 ILCS 50/1(D)(m)(i); and (3) failure to make reasonable progress towards the return of D.B. during the same two nine-month periods pursuant to 750 ILCS 50/1(D)(m)(ii).

¶ 8     On June 27, 2019, the trial court held a hearing on the unfitness portion of the State's motion to terminate respondent's parental rights to D.B. Respondent failed to appear for the hearing. Elizabeth Tevis, D.B.'s case worker with Lutheran Social Services of Illinois (LSSI), was called to testify. She had been D.B.'s case worker since September 2018. Since that time, she had only been in contact with respondent on one occasion after speaking to him on the phone in January 2019. Tevis testified that respondent told her that D.B. was in good hands with the foster mother. Respondent asked Tevis about visits with D.B. and was told that he could contact LSSI to set up visits if he was in town, but he did not follow through on that. She had no other communication with respondent since that January 2019 phone conversation. Respondent had not provided food, clothing, or any other needs of D.B. Since Tevis has been D.B.'s case worker, respondent has never visited D.B. or engaged in any services, meetings to arrange services, or cooperation of any kind with LSSI regarding D.B., although the service plans entered into evidence showed that respondent had two visits with D.B. in April 2018. Respondent had been living between Texas and the Chicago area the last time Tevis spoke with him in January 2019.

¶ 9     On July 11, 2019, the trial court delivered its findings of respondent's parental unfitness. Respondent was not present for the hearing. In finding respondent unfit, the trial court stated:

> "[L]etters were sent to the last known addresses; and phone calls were made to the last known phone numbers. After *** January 2019 *** he returned [Tevis's] phone call *** and told her that he thought the minor was in a good place with the current foster parent. He asked about visits, but he did not follow through with visits. There has been no further communication with [respondent]. He's provided no support, food, or clothing for the minor.

There have been two [administrative case reviews] so far in this case, and none of the parents attended either of those. Three service plans were entered into evidence showing that the services recommended were not received ***.

Further, [respondent] was asked to cooperate with the agency, staying in contact and attending meetings, and *** to have a visitation plan. And the agency would set up visits when he was in town as he self-admitted *** living between Chicago and Texas. There are no visits between [respondent] and the minor since the case opened and no cooperation for services, according to Miss Tevis, who did state that there were [visits] documented in the file *** back in April 2018."

The trial court found respondent unfit as to all three counts of the petition.

¶ 10   Immediately following the delivery of its findings on respondent's unfitness on July 11, 2019, the trial court held a best interests hearing. Respondent remained absent for this portion of the hearing. Elizabeth Tevis was again called to testify. She stated that she had regular contact with D.B. in the foster home from September 1, 2018, to June 29, 2019. D.B. was placed with one of his brothers in the home of his maternal great aunt, Lavale S. D.B. had been in this home since he came into foster care in 2017. Lavale S. resides with her husband, Damon S., whom Tevis had also had regular contact observing with D.B. Tevis testified that D.B. is very attached to both Lavale and Damon S. and treats both like parent figures. D.B. refers to both foster parents as mom and dad. He is making normal progress in his education through reports from his teacher who described him as very happy. D.B. had some speech issues on which Lavale S. continues to work with him. He is making his regular physician appointments. D.B.'s siblings that do not reside in his foster home have been placed with two of Lavale S.'s sisters, allowing all of the children to

interact regularly at community and celebratory events. Tevis believed it to be in D.B.'s best interests for respondent's parental rights to be terminated and the goal changed to adoption.

¶ 11    The trial court found that after considering the statutory best interest factors as they relate to D.B.'s age and developmental stages, as well as all of the evidence introduced, that the State had met its burden and proven by a preponderance of the evidence that it is in D.B.'s best interests that respondent's parental rights be terminated.

¶ 12    Respondent filed this timely appeal.

¶ 13                                   II. ANALYSIS

¶ 14    Respondent contends in this appeal that the trial court's findings of his parental unfitness was against the manifest weight of the evidence as to all counts alleged in the State's petition to terminate his parental rights. Additionally, he contends that the trial court's finding that the State proved by a preponderance of the evidence that termination of his parental rights was in D.B.'s best interest was an abuse of discretion. We will examine respondent's contentions in turn.

¶ 15    A parent's right to raise his or her biological child is a fundamental liberty interest, and the involuntary termination of such right is a drastic measure. *In re B'Yata I.*, 2013 IL App 2d 130558, ¶ 28. Accordingly, the Juvenile Court Act of 1987 provides a two-stage process for involuntary termination of parental rights. 705 ILCS 405/2–29(2) (West 2018). Initially, the State must prove that the parent is unfit. 705 ILCS 405/2–29(2), (4) (West 2018); 750 ILCS 50/1(D) (West 2016); *B'Yata I.*, 2013 IL App 2d 130558, ¶ 28. If the court finds the parent unfit, the State must then show that termination of parental rights would serve the child's best interests. 705 ILCS 405/2–29(2) (West 2016); *B'Yata I.*, 2013 IL App 2d 130558, ¶ 28.

¶ 16    With respect to the first stage of the termination process, section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)) lists various grounds under which a parent may be found unfit.

*In re Antwan L.,* 368 Ill. App. 3d 1119, 1123 (2006). The State has the burden of proving a parent's unfitness by clear and convincing evidence. 705 ILCS 405/2–29(2), (4) (West 2018); *In re Antwan L.,* 368 Ill. App. 3d at 1123. A determination of parental unfitness involves factual findings and credibility assessments that the trial court is in the best position to make. *In re Tiffany M.,* 353 Ill. App. 3d 883, 889–90 (2004). The decision of a trial court with respect to a determination of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005). A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent or the determination is unreasonable, arbitrary, or not based on the evidence presented. *In re Addison R.*, 2013 IL App (2d) 121318, ¶ 22.

¶ 17    Respondent first contends that the State did not prove by clear and convincing evidence that he failed to maintain a reasonable degree of interest, concern or responsibility pursuant to 750 ILCS 50/1(D)(b). He argues that DCFS did not do enough to contact him or keep him apprised of what he must do in order to regain custody of D.B. However, the record belies respondent's arguments.

¶ 18    Because the language used in this ground for unfitness is in the disjunctive, "any one of the three individual elements, *i.e.*, interest *or* concern *or* responsibility, may be considered by itself as a basis for unfitness *B'Yata I.*, 2013 IL App 2d 130558, ¶ 31 (emphasis in orginal).  When determining whether a parent has shown a reasonable degree of interest, concern, or responsibility for a minor's welfare, it considers "the parent's efforts to visit and maintain contact with the child as well as other indicia, such as inquiries into the child's welfare. *Id*.  Courts may also consider whether a parent completed necessary service plans in making such a determination. *Id*. The

interest, concern, or responsibility "must be objectively reasonable," and courts must focus on the parent's efforts, not on her success. *Id.*

¶ 19 On January 18, 2018, respondent was named D.B.'s biological father after DNA testing and agreed in court to D.B.'s adjudication as a neglected minor. Respondent was found to be unfit or unable to care for, protect, train, or discipline D.B. on that day as well. He also was present when DCFS was appointed D.B.'s guardian with the right to place him with a responsible relative or in traditional foster care. Respondent was ordered by the trial court on that day to cooperate with DCFS and its contracting agencies, comply with services as required, and notify DCFS in writing of any change in his address within 48 hours. He did none of these things.

¶ 20 Aside from two visits with D.B. in April 2018, respondent never participated in supervised visits despite an offer from LSSI to participate in weekly visitations. The service plans entered into evidence and Elizabeth Tevis's testimony reflect respondent's failure to provide his addresses after several moves, as well as his failure to engage in any of the requisite counseling or substance abuse assessments. After his last visit with D.B. sometime in April 2018, respondent was not heard from until he returned Tevis's phone call in January 2019 after numerous attempts were made to contact him in order to get him involved in his son's life. He told Tevis during that conversation that he thought D.B. was in good hands with his foster parents. He was again informed by Tevis that he could begin visiting with his son when he was in town, but respondent failed to ever do so. Tevis testified that respondent never provided D.B. with food, clothing, or any of his son's needs. Respondent did not even appear at either portion of the trial on the State's motion to terminate his parental rights to D.B.

¶ 21    The record in this case shows that respondent failed to maintain a reasonable degree of interest or concern or responsibility to D.B. The trial court's determination that the State proved this by clear and convincing evidence was not against the manifest weight of the evidence.

¶ 22    Respondent raises two additional contentions in this appeal regarding an alleged failure by the State to prove by clear and convincing evidence that he did not make reasonable efforts to correct the conditions which were the basis for D.B.'s removal within two nine-month periods pursuant to 750 ILCS 50/1(m)(i), and the State's failure to prove by clear and convincing evidence that he did not make reasonable progress toward the return of D.B. within the same two nine-month periods pursuant to 750 ILCS 50/1(m)(ii). We find it important to note that the brief respondent submitted to this court reads as follows with respect to these two contentions. As to the first contention concerning reasonable efforts, respondent argues in total:

> "Whether a parent has made reasonable efforts to correct the conditions involves a subjective judgment based upon the amount of effort which is reasonable for a particular person." *In re Henry*, 175 Ill. App. 3d 778 (*** 1988).
>
> For the reasons stated in the argument above, based on the lack of effort made by DCFS, the State did not meet its burden with regard to this allegation of unfitness."

As to the second contention concerning reasonable progress toward D.B.'s return, respondent argues in total:

> "Initially it is important to note that 'reasonable progress' exists when a parent shows a minimum measurable or demonstrable movement toward the return of his or her child. *In re H.C.*, 305 Ill. App. 3d 869 (*** 1999). In addition, at a fitness hearing, it is the parent's attempt to remedy past conduct in the then-existing circumstances that is under scrutiny. *In re Paul*, 101 Ill. 2d 345 (*** 1984).

"Again, for the reasons state in the argument above, based on the lack of effort made by DCFS, the State did not meet its burden with regard to this allegation of unfitness."

¶ 23    Proceedings on parental unfitness can result in the permanent and irrevocable termination of a parent's right to raise his or her child. *B'Yata I.*, 2013 IL App 2d 130558, ¶ 42. Therefore, it is paramount that appellate counsel presents this court with good faith arguments on each contention presented with more than the appearance of what strikes us as minimal effort. Respondent's counsel was chastised by this court earlier this year for similar half-hearted arguments that were forfeited for failure to comply with Supreme Court Rule 341(h)(7).[1] Here, we will not go as far as to say the above-reference contentions are not in harmony with Rule 341(h)(7) so as to be forfeited in this appeal, but counsel's future flirtations with indolence and outright frivolity in appeals meant to protect a process whereby the State strips a parent of the rights to raise a child will be dealt with accordingly. However, as we have found that the trial court's determination that respondent was unfit pursuant to 750 ILCS 50/1(D)(b), we need not reach these contentions. See *In re K.F.*, 2012 IL App (2d) 111079, ¶ 40 (if properly proven, any one ground of unfitness is sufficient to find a parent unfit).

¶ 24    We now move on to respondent's final contention.  He contends that the State failed to prove by a preponderance of the evidence that it was in D.B.'s best interests that his parental rights be terminated. Again, respondent's counsel presents this court with no coherent argument on this issue. Respondent's brief lists the factors the trial court must analyze when making a best interests determination under 705 ILCS 405/1-4.05. The following then supposedly amounts to his argument on the State's failure to prove its case by clear and convincing evidence:

---

[1] See *In re J.M.*, 2019 IL App (2d) 180804-U, ¶ 30-31.

"Obviously it is difficult to assess the child's best interest when [respondent] only had two documented visits with D.B. However, as stated above, DCFS contributed to the lack of visitation by not making reasonable effort to contact [respondent]. Also, arguably it is in the child's best interest to at least attempt a relationship with his biological parent before removing that parent from his life. For that reason alone it can be argued that it is not in D.B. best interests that [respondent's] parental rights be terminated."

¶ 25    Once the trial court finds a parent unfit, it must determine whether termination of parental rights is in the minor's best interests. *B'Yata I.*, 2013 IL App 2d 130558, ¶ 41.  Section 1–3(4.05) of the Adoption Act (705 ILCS 405/1–3(4.05) (West 2018)) sets forth various factors for the trial court to consider in assessing a child's best interests. *B'Yata I.*, 2013 IL App 2d 130558, ¶ 41.  The State bears the burden of proving by a preponderance of the evidence that termination is in the best interests of the minor.  *Id.*   A trial court's best-interests finding will not be disturbed on appeal unless it is against the manifest weight of the evidence.  *Id.*   A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent.  *Id.*

¶ 26    We conclude that respondent has not established that the trial court's best-interests finding is against the manifest weight of the evidence. Elizabeth Tevis testified at the best interests hearing that D.B. was almost four years old and placed in a relative foster home with one of his siblings. He would be able to see his other siblings often as they were also placed in relative foster homes. D.B. had become attached to his foster parents since he arrived there in 2017. He calls them mom and dad. His foster parents are taking steps to improve his speech delays. They are making sure he is receiving the proper medical care. And, above all, they love and wish to adopt D.B. It was Tevis's opinion that it was in D.B.'s best interests that respondent's parental rights be terminated.

¶ 27    Given the foregoing evidence, we cannot say that a conclusion opposite to the one reached by the trial court is clearly apparent. As such, we conclude that the trial court's finding that it was in D.B.'s best interests to terminate respondent's parental rights is not against the manifest weight of the evidence.

¶ 28    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 29    Affirmed.