2020 IL App (2d) 200464-U
No. 2-20-0464
Order filed December 7, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* A.P., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| | ) | |
| | ) | No.   18-JA-69 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. Cecil N., | ) | Mary Linn Green, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held:* Pursuant to *Anders v. California*, 386 U.S. 738 (1967), appellate counsel's motion to withdraw is allowed and the judgment of the circuit court is affirmed where no issues of arguable merit were identified on appeal concerning the court's rulings that respondent was shown to be unfit by clear and convincing evidence and that it was in the best interest of the minor that respondent's parental rights be terminated.

¶ 2    On July 24, 2020, the circuit court of Winnebago County found respondent, Cecil N., to be an unfit parent with respect to his minor child, A.P. (born September 26, 2009). Subsequently, the court concluded that the termination of respondent's parental rights was in the minor's best interests, and respondent filed a notice of appeal. The trial court appointed counsel to represent respondent on appeal. Pursuant to the procedures established in *Anders v. California*, 386 U.S. 738

(1967), appellate counsel has filed a motion for leave to withdraw.[1] In his motion, appellate counsel represents that he has reviewed the record but has not discovered any issue that would warrant relief on appeal. Attached to his motion, counsel submitted a memorandum of law summarizing the proceedings in the trial court, identifying any potentially meritorious issues for appeal, and explaining why the issues lack arguable merit. Counsel further represents that he mailed to respondent a copy of the motion and the memorandum of law. The clerk of this court also notified respondent of the motion and informed him that he would be afforded an opportunity to present, within 30 days, any additional matters to this court. This time has past, and respondent has not presented anything to this court. For the reasons set forth below, we grant appellate counsel's motion to withdraw and affirm the judgment of the circuit court.

¶ 3    In his memorandum of law, counsel discusses two main issues: whether the trial court's decision that respondent is an unfit parent is contrary to the manifest weight of the evidence and whether its decision that it is in the minor's best interest that respondent's parental rights be terminated is against the manifest weight of the evidence. With respect to both issues, counsel argues that no meritorious argument could be made that the bases for the trial court's findings are against the manifest weight of the evidence.

¶ 4    The Juvenile Court of 1987 sets forth a bifurcated procedure for the involuntary termination of parental rights.  705 ILCS 405/2-29(2) (West 2018). Under this procedure, the State must make a threshold showing of parental unfitness. *In re Adoption of Syck*, 138 Ill. 2d 255, 277 (1990); *In re Antwan L.*, 368 Ill. App. 3d 1119, 1123 (2006). If a court finds a parent unfit, the State must

---

[1] The *Anders* procedure has been applied to proceedings to terminate parental rights.  See *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000).

then show that termination of parental rights would serve the child's best interests. See *Syck*, 138 Ill. 2d at 277; *Antwan L.*, 368 Ill. App. 3d at 1123. We first address counsel's argument that no meritorious argument could be made that the basis for the trial court's finding of unfitness is against the manifest weight of the evidence.

¶ 5     Section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)) lists various grounds under which a parent may be found unfit. *Antwan L.*, 368 Ill. App. 3d at 1123. The State has the burden of proving a parent's unfitness by clear and convincing evidence, and a trial court's determination of a parent's unfitness will not be reversed unless it is contrary to the manifest weight of the evidence. *In re Brianna B.*, 334 Ill. App. 3d 651, 655 (2002). A decision is against the manifest weight of the evidence "if a review of the record 'clearly demonstrates that the proper result is the one opposite that reached by the trial court.' " *Brianna B.*, 334 Ill. App. 3d at 656 (quoting *In re M.K.*, 271 Ill. App. 3d 820, 826 (1995)).

¶ 6     The State filed its motion for termination of respondent's parental rights on November 22, 2019. The trial court found respondent unfit on all three grounds alleged in the State's motion. Among these grounds was that respondent is depraved pursuant to section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2018)).[2] That section provides that there is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least three felonies and at least one of the convictions occurred within five years of the filing of the motion

---

[2] The State's motion for termination of parental rights incorrectly cited to section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2018)) for the depravity count. Section 1(D)(b) concerns unfitness based on a parent's failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. 750 ILCS 50/1(D)(b) (West 2018).

seeking the termination of parental rights. 750 ILCS 50/1(D)(i) (West 2018). "Depravity" is defined as " 'an inherent deficiency of moral sense and rectitude.' " *In re Abdullah*, 85 Ill. 2d 300, 305 (1981) (quoting *Stalder v. Stone*, 412 Ill. 488, 498 (1952)). Where, as here, the presumption of depravity is rebuttable, the parent may present evidence showing that, despite his convictions, he is not depraved. *In re A.M.*, 358 Ill. App. 3d 247, 253 (2005).

¶ 7    In the present case, the State presented certified copies of respondent's convictions of six offenses, three of which were felonies. One of the felony convictions occurred in 2017, which is within five years of the filing of the motion to terminate respondent's parental rights. Moreover, at the unfitness phase of the hearing, respondent acknowledged that he had been convicted of at least three felonies, with the most recent occurring within the last five years. Therefore, under section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2018)), the State's evidence created a rebuttable presumption that respondent was depraved. Although the trial court found that the State's evidence of depravity was "unrebutted," we observe that, in her closing argument at the unfitness phase of the proceeding, respondent's attorney argued that the presumption of depravity had been overcome because respondent had taken "over ten classes focusing on the morals and his thought processes." She therefore reasoned that "the negative thoughts that were once causing his criminal behavior have been modified and addressed" and that respondent had "changed his negative thoughts into positive." Once a party offers such evidence, the presumption of depravity ceases to exist and the State must prove by clear and convincing evidence that the respondent was unfit because of depravity. *A.M.*, 358 Ill. App. 3d at 253-54.

¶ 8    As noted above, respondent has a substantial criminal history. The State's evidence consisted of respondent's convictions of three misdemeanors and three felonies between 2009 and 2017. One of these convictions was for aggravated battery, one was for interfering with a report of

domestic violence, two were for violations of an order of protection, and two were for domestic battery. These convictions were of sufficient repetition to establish a deficiency in respondent's moral sense and either an inability or unwillingness of respondent to conform to accepted morality. See *A.M.*, 358 Ill. App. 3d at 254. Thus, the evidence proved that respondent's depravity existed at the time of these proceedings.

¶ 9    As evidence that he was not depraved, respondent's attorney at the unfitness hearing asserted that respondent had taken "over ten classes focusing on the morals and his thought processes" and therefore reasoned that the negative thoughts that were causing respondent's criminal behavior had been addressed. The majority of respondent's convictions involved or were related to incidents of domestic violence. At the unfitness hearing, respondent testified that he completed the partner abuse intervention program (PAIP). However, he later acknowledged that he was arrested for domestic violence after completing the PAIP class and later imprisoned. Thus, completion of the PAIP class did not show that he was no longer depraved. See *A.M.*, 358 Ill. App. 3d at 254. Respondent also testified that while incarcerated, he completed several faith-based classes and a "Start Now" program, which he described as a behavior-modification class. In addition, respondent participated in (but did not complete) a program entitled "Thinking for a Change," which focuses on changing negative thoughts into positive ones. While commendable, the participation in or completion of classes in prison does not show rehabilitation. *A.M.*, 358 Ill. App. 3d at 254.

¶ 10    In short, after respondent presented evidence that he was not depraved and the rebuttable presumption ceased to exist, the burden remained with the State to prove by clear and convincing evidence that respondent was depraved. The State met this burden, and respondent failed to show that he was no longer depraved. Consequently, we agree with appellate counsel that no meritorious

argument could be made that the basis for the trial court's finding of unfitness is against the manifest weight of the evidence. Because only one ground of unfitness need be proven, we need not address the other grounds found by the trial court. See *Antwan L.*, 368 Ill. App. 3d at 1123.

¶ 11    As noted above, once the trial court finds a parent unfit, it must determine whether termination of parental rights is in the minor's best interests. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 882 (2010).  As our supreme court has noted, at the best-interest phase, "the parent's interest in maintaining a parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The State bears the burden of proving by a preponderance of the evidence that termination is in the best interests of the minor. *D.T.*, 212 Ill. 2d at 366; *In re Deandre D.*, 405 Ill. App. 3d 945, 953 (2010). As with a finding of unfitness, a trial court's best-interest finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Deandre D.*, 405 Ill. App. 3d at 953.

¶ 12    As noted above, appellate counsel contends that no meritorious argument could be made that the trial court's finding that it is in the minor's best interests that respondent's parental rights be terminated is against the manifest weight of the evidence. Whenever a best-interest determination is required, certain statutory factors shall be considered in the context of the minor's age and developmental needs. 705 ILCS 405/1-3(4.05) (West 2018). These factors include: (1) the physical safety and welfare of the child; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachment, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) community ties; (7) the child's need for permanence; (8) the uniqueness of every family and child; (9) the risks related to substitute care;

and (10) the preferences of the person or persons available to care for the child. 705 ILCS 405/1-3(4.05) (West 2018).

¶ 13    The best-interest phase of the proceeding was held on July 24, 2020. At the hearing, caseworker Samantha Hagerman testified that since June 2018, A.P. has been residing with her maternal grandparents, who are retired. C.G., A.P.'s half-brother, also resides in the home. Hagerman testified that A.P. is very bonded to her maternal grandparents. Further, A.P. considers her maternal grandparents as her mom and dad, although she does not call them "mom" or "dad." Hagerman testified that the maternal grandparents meet A.P.'s daily needs, including food, shelter, and clothing. They also ensure that A.P. attends her regular counseling sessions and they foster A.P.'s creativity by encouraging her artistic side. Hagerman noted that while A.P. has had outbursts in the past, the maternal grandparents have worked with her to minimize them and A.P. has been outburst-free for several months.

¶ 14    Hagerman testified that the maternal grandparents are "on the fence" about whether to maintain a relationship with respondent, but will do whatever is in the best interests of the minor. To this end, Hagerman noted that the maternal grandparents include A.P. in their family celebrations. In addition, they have facilitated contact between A.P. and a third half-sibling who resides with her biological father. Hagerman also noted that A.P. has made a lot of friends at her current school and in her neighborhood. Allowing the adoption to proceed would mean that A.P. would not have to change schools. Hagerman testified that A.P. has expressed a desire to be adopted by her maternal grandparents. Moreover, the maternal grandparents have indicated that they are willing to provide permanency for the minor.

¶ 15    Hagerman testified that A.P. had a visit with respondent in May 2020. The visit was virtual due to the Covid-19 pandemic. The visit was scheduled for one hour but ended after 40 minutes

because neither A.P. nor respondent knew what to talk about. A.P. told Hagerman that the visit was "a little awkward because of having to try and keep the conversation going." A follow-up virtual visit was scheduled for June. A link for the June visit was sent to respondent's e-mail address prior to the scheduled visitation. Respondent was also informed via text message that a link was sent to his e-mail address. Nevertheless, respondent missed the June visit. A.P. was upset that respondent missed the visit and later told Hagerman that she did not want to continue the visits with respondent.

¶ 16    Hagerman opined that it is in A.P.'s best interest to terminate respondent's parental rights and free her up for adoption by the maternal grandparents. Hagerman testified that A.P.'s therapist also indicated that it would be in the minor's best interest to be adopted.

¶ 17    Respondent did not testify at the best-interest phase of the proceeding, but made the following proffer. Respondent felt that the May 2020 visit with A.P. went well. A.P. was laughing, talking, and opening up. Moreover, the missed visit in June was due to a change in respondent's phone number.

¶ 18    The foregoing evidence establishes that the maternal grandparents are providing for the physical safety, welfare, and needs of the minor. 705 ILCS 405/1-3(4.05)(a) (West 2018). In addition, given the time the minor has spent with the maternal grandparents and the relationships that have developed, it is clear that the minor's identity, familiarity, sense of attachment, sense of security, and sense of affection all lie with the maternal grandparents. 705 ILCS 405/1-3(4.05)(b), (c), (d) (West 2018). It is also apparent by the testimony presented at the best-interest phase that A.P. feels loved by her maternal grandparents. 705 ILCS 405/1-3(4.05)(d) (West 2018). Indeed, A.P. has expressed a desire to remain with her maternal grandparents. 705 ILCS 405/1-3(4.05)(e) (West 2018). Further, A.P. has established friendships in her current community, the maternal

grandparents have included the minor in their family celebrations, the maternal grandparents have facilitated contact between A.P. and another half-sibling, and the maternal grandparents have expressed a desire to adopt her. 705 ILCS 405/1-3(4.05)(f), (g), (j) (West 20186). In light of the foregoing, the trial court's determination that it was in A.P.'s best interests that respondent's parental rights be terminated was supported by ample evidence. As such, we conclude that the trial court's finding at the best-interest phase was not against the manifest weight of the evidence, and counsel could not make a reasonable argument to the contrary.

¶ 19    In sum, after carefully examining the record, the motion to withdraw, the accompanying memorandum of law, and the relevant authority, we agree with appellate counsel that no meritorious issue exists that would warrant relief in this court. Therefore, we allow the motion of appellate counsel to withdraw in this appeal, and we affirm the judgment of the circuit court of Winnebago County finding respondent unfit and terminating his parental rights to the minor.

¶ 20    Affirmed.